**UNITED STATES of America, Appellee,**

**v.**

**Eugene C. KIRK, Sr., et al., Appellants.**

**Nos. 75–1359, 75–1364, 75–1365, 75–1386, 75–1429, 75–1449 and 75–1542.**

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 11, 1976.

Decided April 22, 1976.

Rehearing and Rehearing En Banc Denied May 17, 1976.

Affirmed.

William C. Brown, T. George Gilinsky, Washington, D. C., for appellee; Donald J. Stohr, U. S. Atty., St. Louis, Mo., and Jerome M. Feit, Washington, D. C., on the briefs.

James M. Martin, Lawrence J. Fleming and Thomas Scott Richardson, St. Louis, Mo., for appellants; Mark R. Bahn, William M. Nicholls, J. William Newbold, Dennis T. Rathmann, Daniel V. O'Brien and Robert A. Hampe, St. Louis, Mo., on the briefs.

Before GIBSON, Chief Judge, BRIGHT, Circuit Judge, and VAN PELT, Senior District Judge.*

VAN PELT, Senior District Judge.

The nine appellants herein were convicted by a jury of having conspired to distribute, and to possess with intent to distribute, heroin, in violation of 21 U.S.C. § 846. Each appellant was also convicted of one or more related substantive distribution offenses.[1] They now appeal from those convictions, contending numerous errors were made by the trial court during their joint trial. We affirm on all issues raised in this appeal.

The issues presented are many:

1. Whether the evidence presented by the government established a single conspiracy as charged in the indictment or multiple conspiracies as the appellants contend.

2. Whether the evidence was sufficient to convict Audrene Hill, Deborah Barnett,

---

* The Honorable Robert Van Pelt, United States Senior District Judge for the District of Nebraska, sitting by designation.

1. Specifically, appellant Eugene C. Kirk, Sr., was convicted of four counts of having distributed, and possessed with intent to distribute, heroin, in violation of 21 U.S.C. § 841(a)(1), of twelve counts of having used a telephone to facilitate a conspiracy to possess and distribute heroin, in violation of 21 U.S.C. § 843(b), and of one count of having engaged in a continuing criminal enterprise, in violation of 21 U.S.C. § 848. Appellant Gregory L. Kirk was convict-

ed on one count of having distributed and possessed with intent to distribute heroin, in violation of 21 U.S.C. § 841(a)(1). Appellants Audrene Hill, Deborah Barnett, William Guy Hamilton, Liddell Green, Caroline Kirk, Marvin Bonds and Eddie Roberts were each convicted of one count of having used a telephone to facilitate a conspiracy to possess and distribute heroin, in violation of 21 U.S.C. § 843(b). The appellants received substantial sentences ranging from five years to forty years with additional special parole terms of three to eighteen years.

Caroline Kirk, Liddell Green, Eddie Roberts and Marvin Bonds.

3. Whether the trial court erred in refusing to suppress recordings of telephone conversations between a government informant and one of the appellants where the informant did not testify at trial.

4. Whether the trial court erred in admitting recordings of telephone conversations among the appellants intercepted during a court authorized wiretap.

5. Whether the court prejudicially erred in allowing the jury to use transcripts of the recorded conversations prepared by the government as an aid in listening to the recordings played at trial, and in permitting identification testimony based on those recordings.

6. Whether 21 U.S.C. § 848 is unconstitutionally vague, and whether the evidence was sufficient to convict Eugene Kirk under that statute.

7. Whether the court erred in refusing to quash the jury panel on the grounds that it did not represent a cross section of the community.

8. Whether the court erred in instructing the jury regarding reasonable doubt, circumstantial evidence, acts and declarations of co-conspirators and membership in a conspiracy, and the failing to give offered instructions on voice identification and on the failure of the government to call a witness.

9. Whether the court erred in refusing to declare a mistrial because of prejudicial pre-trial publicity.

10. Whether the evidence seized at the two addresses involved in this case should have been suppressed because of insufficient probable cause for the search warrant.

11. Whether the appellants Kirk and Barnett were denied effective assistance of counsel and the right to be free on reasonable bail during the proceedings against them by the trial court's revocation of their bonds.

12. Whether the court erred in admitting testimony of government witnesses concerning the identification of certain substances as heroin and concerning the operation of certain tape recorders.

Between March 18, 1974, and June 18, 1974, undercover agents for the Drug Enforcement Administration (DEA) made four purchases of heroin from a James Nofles. The first of these transactions involved a black 1971 Mercury (license # S9H–758) which was followed to a residence at 6145 Lalite in St. Louis. Later investigation revealed this was the home of Eugene Kirk, Sr. The remaining three transactions occurred in and around the residence of Gwendolyn Williams at 4762 Northland.

The agents arrested Nofles on August 6, 1974. After his arrest, Nofles agreed to cooperate and assist the government investigation by arranging heroin purchases in telephone conversations to be recorded by the DEA agents.

From August 6, 1974, to September 4, 1974, Nofles made six telephone calls that were recorded by the agents. All the calls were made to two telephones located at 6145 Lalite. In the first call he negotiated with Deborah Barnett and Eugene Kirk for the purchase of a quantity of heroin. The remaining five calls resulted in purchases of heroin on four separate occasions. After arranging the purchase, Nofles was searched by DEA agents. The agents would then take him to the transaction site, provide the necessary funds, observe the purchase and collect the heroin Nofles had received.

The heroin was delivered to Nofles at a different place for each transaction. The first time Nofles went to the residence of Audrene Hill at 5707 Mimika and returned with a package of heroin. The second time Eugene Kirk delivered the heroin to a street location in St. Louis, arriving in the same black Mercury mentioned earlier. The third transaction involved delivery by Willie West Johnson, and the last delivery was made by Gregory Kirk, a son of Eugene Kirk.

During this same period of time, Nofles asked Kirk if he could give his phone number to another buyer (DEA agent Roy Shurn). He was advised to give Shurn the

telephone number of Willie West Johnson instead. Shurn had a couple of conversations involving heroin with Johnson following that time, but none was purchased.

On September 25, 1974, after receiving authorization from Attorney General William Saxbe pursuant to 18 U.S.C. § 2516, the government applied for a court order authorizing interception of wire communications on two telephones at 6145 Lalite. This order was granted and the intercept proceeded. During the twenty days the order was in effect, the agents intercepted 2918 phone conversations on the two phones, an average of 146 calls per day. The interceptions established the existence of heroin trafficking among the appellants and other individuals. The conversations disclosed numerous heroin transactions involving all appellants as well as the efforts of Eugene Kirk to make purchases of heroin in New York and California.

The wire interception terminated on October 15, 1974. However, there was one final phone call made by Nofles to Gwen Williams on October 24. This was recorded with his consent and a purchase of heroin was arranged. On October 28, 1974, search warrants were executed on the residence at 6145 Lalite and also at 5979 Summit (home of a James Nelson). A foil packet containing traces of heroin was found at the Lalite address, where Gregory Kirk and Deborah Barnett were arrested. The remaining appellants plus a number of other individuals were arrested subsequently. Further facts will be developed as the issues are discussed.

*Single Conspiracy v. Multiple Conspiracy.*

The appellants contend that the evidence presented in this case indicates at best a series of separate transactions involving heroin sales with Eugene Kirk as the "hub" and the other appellants merely participated in separate and isolated transactions. It is their contention that this evidence established only a series of multiple conspiracies, not the single conspiracy as the government contends.

The appellants are correct in their assessment of the problems encountered in mass conspiracy trials when a number of defendants are tried together, especially if the evidence presented does, in fact, fail to show the defendants were involved in a single conspiracy. *See United States v. Kotteakos,* 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1945); and *United States v. Sperling,* 506 F.2d 1323 (2d Cir.1974), *cert. denied,* 420 U.S. 962, 95 S.Ct. 1351, 43 L.Ed.2d 439 (1975). However, the evidence in this case was more than sufficient for the jury to find a single conspiracy among the appellants to purchase and distribute heroin in the St. Louis area. The court quite properly denied the appellants' motions concerning severance and the multiple-conspiracy instructions. Since there was substantial evidence of a single conspiracy, there was no need to instruct the jury as to multiple conspiracies, *United States v. Barrera,* 486 F.2d 333 (2d Cir.), *cert. denied,* 416 U.S. 940, 94 S.Ct. 1944, 40 L.Ed.2d 291 (1973), nor was there an abuse of the trial court's discretion in the denial of the severance motions. *United States v. Hutchinson,* 488 F.2d 484 (8th Cir.), *cert. denied,* 417 U.S. 915, 94 S.Ct. 2616, 41 L.Ed.2d 219 (1973).

As a normal rule, severance should be allowed upon a showing of real prejudice to an individual defendant, *United States v. Hutchinson,* 488 F.2d 484 (8th Cir.1973); however, "in the absence of such a showing, persons charged in a conspiracy should be tried together, especially where the proof of the charges against the defendants is based upon the same evidence and the same acts." *Id.* at 492. The question of whether to sever the appellants' trials was in the sound discretion of the trial judge, *Fed. R. Crim. P.* 14, and based on the conspiracy evidence presented by the government that discretion was not abused.

A review of the evidence presented points out the weakness in the appellants' position. In addition to the activities brought to light through the use of the informant, Nofles, the involvement of the various appellants in the conspiracy was

further developed by the wire interception. Looking at the evidence developed against each appellant separately, it becomes apparent that there was sufficient evidence of a conspiracy to submit the case to a jury.

Eugene Kirk was involved in almost all of the phone calls intercepted and played to the jury. The recorded conversations had him dealing with various distributors, including appellants Hill, Caroline Kirk, Hamilton, Bonds and Roberts. He negotiated for heroin purchases from other dealers in California, Renall Dudley and Anderson Young, and sent people from St. Louis to either purchase heroin or make further arrangements in California (Williams and Barnett) and in New York (Green). He was involved in distributing heroin by either personally delivering to Nofles, Hamilton and others, or having it delivered by Barnett and Gregory Kirk. He arranged deliveries between various distributors, such as between Caroline Kirk and Bonds, Caroline Kirk and Nelson, Bonds and Cranage and Hill and Thomas. From the evidence presented to the jury there can be no doubt that Eugene Kirk was the leader and organizer of the conspiracy. He performed the many functions of a leader and organizer from managing personnel to overseeing quality control. His part in the conspiracy is well established.

Deborah Barnett also played a major part in the distribution business. She assisted Kirk in working with his distributors by assisting them with their sales (Caroline Kirk). She arranged sales and made deliveries to Cranage and Hill. Her assistance was also used in attempting purchases in California through her trip to San Diego to meet with Anderson Young. She dealt with many problems in Kirk's absence such as quality control, dealing with dissatisfied buyers, and making deliveries to the distributors. Her importance to and involvement with the conspiracy cannot be questioned.

Gregory Kirk's involvement in the conspiracy was established by his involvement with the delivery of heroin to informant Nofles and agent Shurn on September 4. He was also recorded in a conversation with Barnett where it was quite obvious that he was requesting she bring heroin to him. His name was mentioned by Eugene Kirk and Marvin Bonds in a series of conversations as the person who was to pick up some heroin and marijuana from Bonds. Gregory was also arrested at the 6145 Lalite address at the time of the execution of the search warrant. These facts when viewed together present substantial evidence that Gregory Kirk knew of and participated in the conspiracy.

Audrene Hill's involvement as a distributor in Eugene Kirk's network was established at the trial through a number of recorded telephone conversations with Kirk and Barnett. During these conversations she discussed a customer who would try and contact Kirk. In other conversations Kirk checked her inventory of "buttons" or small capsules of heroin and gave her instructions on what was to be done with them. The informant, Nofles, purchased heroin at Hill's address after setting up the purchase with Eugene Kirk. Ms. Hill's participation in this case is apparent.

There was also substantial evidence presented whereby the jury could find that Caroline Kirk was heavily involved in the drug distribution network. Her phone number was given out by Barnett to a potential customer, as well as a customer who was unsatisfied with the quality of a former purchase. Ms. Kirk also had a series of conversations with Eugene Kirk wherein she was attempting to locate some heroin. He suggested she contact Marvin Bonds and James Nelson.

William Hamilton was recorded talking to Eugene Kirk about getting a quantity of "pee" and arranging its delivery. He and Kirk were observed by DEA agents a short time later at the location arranged in the phone conversation. On two subsequent occasions Hamilton again made arrangements to purchase heroin and have it delivered to a street location. This is more than sufficient evidence to establish his part in the conspiracy.

Liddell Green was shown to have been involved in Kirk's attempt to purchase her-

oin in New York. Green was observed at Kirk's residence and proceeding directly to the St. Louis airport, where he took a flight to New York. He telephoned Kirk and asked about white heroin ("white boys"). He was advised by Kirk to watch out for "man made" and that white heroin was okay if it could be cut six or seven times. Another call by Kirk to another individual some days later discussed Green's call and his inexperience with white heroin. Again, there was sufficient evidence to establish involvement.

Eddie Roberts was established as being a part of the Kirk network through two telephone calls. In one of the calls they discussed a quantity of heroin Roberts had available and which Roberts agreed to bring to Kirk. The second conversation concerned an aborted trip by a Gwen Williams to San Francisco to purchase heroin from Renall Dudley. Williams was either robbed or pretended robbery and kept the money Kirk sent with her. The two men discussed the robbery and Williams' involvement and Kirk said that Roberts' "bank" was okay. These calls were made by Kirk to the phone at the address where Roberts was served with a subpoena to take a voice exemplar prior to trial. This was sufficient to establish contact and knowledge of the conspiracy.

Marvin Bonds was involved in a number of conversations linking him to the conspiracy. On one occasion Eugene Kirk telephoned Bonds and arranged to get a quantity of heroin and some marijuana. Sometime later the same day, Bonds called Kirk and indicated that he thought Buttons (Gregory Kirk) was going to pick up the drugs. There were two more calls during which Bonds agreed to deliver. During one of these conversations, Kirk told Bonds that it was part of the job to make such deliveries. There were additional calls concerning this transaction. In subsequent conversations, Bonds was instructed to deliver some heroin to Cranage. Cranage phoned Kirk and confirmed the delivery. Bonds' phone number was also given to Caroline Kirk when she was looking for a quantity of heroin. There was more than sufficient evidence to link Bonds to the conspiracy.

The appellants complain of the prejudice involved in admitting into evidence the statements of the co-defendants; that such evidence is inadmissible hearsay and admitting it violates the rule of *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). However, the United States Supreme Court has recently stated:

> The hearsay rule does not automatically bar all out-of-court statements by a defendant in a criminal case. Declarations by one defendant may also be admissible against other defendants upon a sufficient showing, by independent evidence, of a conspiracy among one or more other defendants and the declarant and if the declarations at issue were in furtherance of that conspiracy. The same is true of declarations of coconspirators who are not defendants in the case on trial. *Dutton v. Evans,* 400 U.S. 74, 81, 91 S.Ct. 210, 215, 27 L.Ed.2d 213 (1970). [*United States v. Nixon,* 418 U.S. 683, 701, 94 S.Ct. 3090, 3104, 41 L.Ed.2d 1039, 1060 (1974).]

*Accord, United States v. Richardson,* 477 F.2d 1280 (8th Cir.) *cert. denied,* 414 U.S. 843, 94 S.Ct. 104, 38 L.Ed.2d 82 (1973). Of course, "there must be substantial, independent evidence of the conspiracy, at least enough to take the question to the jury." *Id.* 418 U.S. at 701, n. 14, 94 S.Ct. at 3104, 41 L.Ed.2d at 1060.

This court has stated:

> Previous acts of a co-conspirator may be admissible against a defendant once a prima facie case of conspiracy is proved when such previous acts show the nature and objectives of the conspiracy. [*United States v. Morton,* 483 F.2d 573, 576 (8th Cir.1973).]

It has also held:

> If a defendant's participation in a conspiracy has been established, then the defendant is culpable for everything said, written or done by any of the other conspirators in furtherance of the common purpose of the conspiracy. [*United*

*States v. Overshon,* 494 F.2d 894, 896 (8th Cir.), *cert. denied,* 419 U.S. 853, 95 S.Ct. 96, 42 L.Ed.2d 85 (1974).]

*Accord, United States v. Rich,* 518 F.2d 980 (8th Cir.1975). Viewing the evidence in the light most favorable to the jury verdict rendered, as we must do, *id.* at 984, *United States v. Overshon, supra* at 896, it is readily apparent that the government has established the existence of a single conspiracy in which the appellants not only took an active part, but also knew of the involvement of others. The evidence was sufficient to show a nexus between each appellant and the conspiracy. *See United States v. Hester,* 465 F.2d 1125 (8th Cir.1972). There was " 'evidence that each was aware of others in the line of distribution and of the larger nature of the operation in which he \* \* \* played a part,' " *United States v. Sperling, supra* at 1340, and that the "conspirators at one end of the chain knew that the unlawful business would not, and could not, stop with their buyers; and those at the other end knew that it had not begun with their sellers." *United States v. Bynum,* 485 F.2d 490, 496 (2d Cir.1973), *vacated on other grounds,* 417 U.S. 903, 94 S.Ct. 2598, 41 L.Ed.2d 209 (1944).

The trial court was quite proper in not instructing the jury on multiple conspiracies. It also did not violate the *Bruton* rule by refusing to sever the cases and by allowing admission of the statements challenged by the appellants.

### Sufficiency of the Evidence.

■ A number of the appellants contend the evidence was insufficient to convict them of involvement in the conspiracy. Specifically these include Deborah Barnett, Caroline Kirk, Audrene Hill, Liddell Green, Eddie Roberts and Marvin Bonds. It is difficult to find any real merit to their contentions.

Once the government has established the existence of a conspiracy, even slight evidence connecting a particular defendant to the conspiracy may be substantial and therefore sufficient proof of the defend-ant's involvement in the scheme. [*United States v. Overshon, supra* at 896.]

The evidence against each of the appellants was set forth above and further repetition is unnecessary. In addition to the above evidence, appellants Caroline Kirk and Eddie Roberts were also identified through the use of voice exemplars.

There was more than sufficient evidence for the jury to find all the appellants guilty of being involved in the conspiracy to distribute heroin in St. Louis.

### The Consensual Recordings.

■ It is well settled that a defendant's Fourth Amendment rights are not violated when the defendant's conversations with a government informant are recorded with the consent of the informant. *United States v. Rich, supra* at 984–985; *United States v. McMillan,* 508 F.2d 101, 104 (8th Cir.), *cert. denied,* 421 U.S. 916, 95 S.Ct. 1577, 43 L.Ed.2d 782 (1974). The appellants do not appear to contend otherwise.

However, they strongly contend that the government did not prove the informant's consent to these recorded conversations and the fact that Nofles was unavailable at trial is violative of due process. It is their contention that Nofles was coerced by the DEA agents and therefore his consent was not freely given; that due process and confrontation rights were violated when Nofles was not presented at trial so that he could be examined on the question of coerced consent.

■ In deciding on the voluntariness of Nofles' consent we must look at the totality of circumstances surrounding the events in question. *United States v. McMillan, supra* at 104, n. 2. In *McMillan* this court cited with approval the Second Circuit's decision in *United States v. Bonnano,* 487 F.2d 654 (2d Cir.1973), for the proposition that "it will normally suffice for the government to show that the informer went ahead with a call after knowing what the law enforcement officers were doing." *United States v. McMillan, supra* at 104, n. 2. In this case Nofles knew what the agents were doing with the recording equipment and he went

ahead with his telephone calls to Eugene Kirk.

Although such a showing is normally sufficient to establish consent, the appellants contend that this consent was coerced. Agent Reiff testified that Nofles was not threatened, coerced or promised immunity in exchange for his consent, but was only told that his cooperation would be made known to the prosecuting attorney. Consent has been found under lesser circumstances. In *United States v. Rich, supra* at 985, it was said:

> The fact that Walsh became a government informant in exchange for a promise of immunity from prosecution in no way diminishes the voluntariness of his "consent" to the monitoring of his conversations with the defendants and the other alleged conspirators.

▮ Viewing the totality of circumstances surrounding the recording of Nofles' conversations with Kirk, it seems apparent that Nofles gave his consent freely in hopes that the prosecutor would take his cooperation into account when the prosecution began. According to the above cited cases, consent so given is to be considered voluntary. The government met its burden of proving the voluntariness of the informant's consent.

▮ The appellants also contend that they were prejudiced by the loss of the testimony of an informant who was also allegedly involved in the drug distribution scheme. "The likelihood that the loss was prejudicial is eased by the reliability of the evidence presented by the government." *United States v. Norton,* 504 F.2d 342 (8th Cir.1974), *cert. denied,* 419 U.S. 1113, 95 S.Ct. 790, 42 L.Ed.2d 811 (1975). The government's evidence concerning the transactions and conversations in which Nofles was involved was substantial and reliable. Balancing this evidence and the fact that prior to trial Nofles' written statements were made available to the defense with the fact that it was impossible for Nofles to appear, this court cannot say that any of the appellants' rights were violated by admission of the recorded conversations.

*The Court-Authorized Wire Interception.*

The appellants contend that the trial court erred in refusing to suppress the multitude of recorded conversations gained by the government through the use of the court-authorized wire interception. The contention is based on numerous theories, including the unconstitutionality of the "wiretap" statute, 18 U.S.C. § 2510 *et seq.,* lack of probable cause and staleness, failure to exhaust normal investigative procedures as well as other procedural defects. We find no merit in any of their positions.

▮ The appellants' attack on the constitutionality of Title III of the Omnibus Crime Control Act of 1968, 18 U.S.C. §§ 2510–2520, meets overwhelming resistance in this circuit as well as every circuit that has faced the issue. Title III fully meets the constitutional requirements of the Fourth Amendment. *United States v. Cox,* 462 F.2d 1293 (8th Cir.1972), *cert. denied,* 417 U.S. 918, 94 S.Ct. 2623, 41 L.Ed.2d 223 (1974); United States v. John, 508 F.2d 1134 (8th Cir.1975); *United States v. Tortorello,* 480 F.2d 764 (2d Cir.), *cert. denied,* 414 U.S. 866, 94 S.Ct. 63, 38 L.Ed.2d 86 (1973); *United States v. Cafero,* 473 F.2d 489 (3d Cir.1973), *cert. denied,* 417 U.S. 918, 94 S.Ct. 2622, 41 L.Ed.2d 223 (1974); *United States v. Bobo,* 477 F.2d 974 (4th Cir.1973), *cert. denied,* 421 U.S. 909, 95 S.Ct. 1557, 43 L.Ed.2d 774 (1974); *United States v. Sklaroff,* 506 F.2d 837 (5th Cir.1975); *United States v. Martinez,* 498 F.2d 464 (6th Cir.), *cert. denied,* 419 U.S. 1056, 95 S.Ct. 639, 42 L.Ed.2d 654 (1974); *United States v. Ramsey,* 503 F.2d 524 (7th Cir.1974), *cert. denied,* 420 U.S. 932, 95 S.Ct. 1136, 43 L.Ed.2d 405 (1975); *United States v. Cox,* 449 F.2d 679 (10th Cir.1971), *cert. denied,* 406 U.S. 934, 92 S.Ct. 1783, 32 L.Ed.2d 136 (1972); *United States v. James,* 161 U.S.App.D.C. 88, 494 F.2d 1007, *cert. denied,* 419 U.S. 1020, 95 S.Ct. 495, 42 L.Ed.2d 294 (1974).

We have examined the application for the wire interception and the accompanying affidavit and find no support for the appellants' contention that there was a lack of probable cause to support granting the request.

The application for the wire interception must be viewed in a "commonsense way," *United States v. Ventresca,* 380 U.S. 102, 109, 85 S.Ct. 741, 746, 13 L.Ed.2d 684, 689 (1965), to determine if there were ample facts to establish probable cause to grant the wire interception request. "[I]n judging probable cause issuing magistrates are not to be confined by niggardly limitations or by restrictions on the use of their common sense * * *." *Spinelli v. United States,* 393 U.S. 410, 419, 89 S.Ct. 584, 591, 21 L.Ed.2d 637, 645 (1969); *United States v. Kleve,* 465 F.2d 187, 193 (8th Cir.1972).

The five-page application in this case was supported by a ten-page affidavit of DEA agent Reiff. It was a detailed statement of the facts known to the agent at that time, including the involvement of informant Nofles, the conversations with Kirk and Johnson, the deliveries by Gregory Kirk and Eugene Kirk, as well as automobile license registrations, telephone records, addresses, etc., of the known parties involved. If all applications for search warrants were this complete, similar probable cause issues would soon disappear from appellate court dockets.

The appellants' position concerning staleness of the application is also without merit. The proposition that " * * the proof must be of facts so closely related to the time of the issue of the warrant as to justify a finding of probable cause at that time." *Sgro v. United States,* 287 U.S. 206, 210, 53 S.Ct. 138, 140, 77 L.Ed. 260, 263 (1932), is, of course, true. However, "probable cause is not determined by merely counting the number of days between the time of the facts relied upon and the warrant's issuance." *United States v. Rahn,* 511 F.2d 290, 292 (10th Cir. 1975). Other factors are to be considered, including "the nature of the criminal activity involved * * *." *United States v. Steeves,* 525 F.2d 33, 38 (8th Cir. 1975). The twenty-one day time lapse between the date of the last information contained in the application and the issuance of the wire interception order does not proscribe a finding of probable cause in this instance. The activity involved was a continuing criminal conspiracy to distribute heroin, and the affidavit supporting the application so stated. Under such conditions, "time is of less significance." *Bastida v. Henderson,* 487 F.2d 860, 864 (5th Cir. 1973). Probable cause was not eliminated by the twenty-one day delay.

The statute involved here, 18 U.S.C. § 2518(1)(c), requires that the application for an order authorizing wire interception set forth "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous * * *." This requirement is to be reasonably construed and the application tested in a "commonsense fashion." *United States v. Brick,* 502 F.2d 219, 224, n. 14 (8th Cir. 1974). Viewing the instant application and affidavit in this light, it is quite obvious that the statutory requirements were met. Agent Reiff's affidavit states in detail the reasons that normal investigative techniques had not been successful in determining the extent of the heroin operation. These reasons included inability to determine who lived with Kirk at the 6145 Lalite Avenue address, and who else was involved in his operation from the source to the retail market. The affidavit states the danger of being discovered if normal surveillance techniques were continued as a sole means of investigation. This court cannot read the above statute to require more of the government than was done in this case.

The government also exceeded the requirements of the statute in naming the person whose communications were to be intercepted. All that 18 U.S.C. § 2518(1)(b) requires is that the application contain a full and complete statement of the facts, including details as to the particular offense being committed, a particular description of the nature and location of the facilities where the communication is to be intercepted, a particular description of the type of communications to be intercepted and the identity of the person, if known, committing the offense and whose commu-

nications are to be intercepted. There can be little doubt that the purpose of this subsection is to "link up specific person, specific offense, and specific place." S.Rep. No.1097, 90th Cong.2d Sess.1968, U.S.Code Cong. & Admin.News 1968, p. 2191. There is no broad naming requirement in the statute. The government is not required to name every person who might be recorded in the wire interception. Therefore, the fact that some of the appellants (mainly, Deborah Barnett) were not named in the application does not mean that the authorization order was invalid. The application named all the individuals whom the government had probable cause to suspect would be involved in telephone conversations with the principal, Eugene Kirk. To require a broader naming requirement would improperly expand the statute and absent probable cause to support every name included, would most likely cause the application to be subject to denial or the evidence gathered therefrom subject to suppression. *See United States v. Tortorello,* 480 F.2d 764, 775 (2d Cir.), *cert. denied,* 414 U.S. 866, 94 S.Ct. 63, 38 L.Ed.2d 86 (1973).

■ The Attorney General's approval or that of any Assistant Attorney General specially designated by him is required by 18 U.S.C. § 2516 before any application can be made for a wire interception. However, contrary to the appellants' assertion, the trial court did not have to hold an evidentiary hearing to determine the authenticity of Attorney General Saxbe's signature on the approval memorandum. There is nothing in the statute or in the cases dealing with the Attorney General's approval that requires a formal finding of authenticity. The cases that have dealt with related issues have involved either approval by persons not authorized under the statute, *United States v. Giordano,* 416 U.S. 505, 94 S.Ct. 1820, 40 L.Ed.2d 341 (1974), or misidentification of the authorizing official in the order authorizing interception, *United States v. Chavez,* 416 U.S. 562, 94 S.Ct. 1849, 40 L.Ed.2d 380 (1974). *See United States v.*

*Quintana,* 508 F.2d 867 (7th Cir. 1975). Neither of these situations is present here. The order authorizing the interception properly identifies William Saxbe as the proper official and the application contained a memorandum signed by William Saxbe, Attorney General, authorizing the application.

■ The appellants contend that there is no presumption of regularity with respect to the performance of the Justice Department. However, there is nothing in the statute or the cases cited above that support such a position. When the memorandum authorizing the application contains the heading "TO: Assistant Attorney General * * * FROM: The Attorney General" and contains the signature "William Saxbe," it seems apparent that the government has made a prima facie showing of the memorandum's authenticity. Absent further showing of impropriety by the appellants, this court cannot hold the authorization invalid when it is plainly sufficient on its face.

■ We must also disagree with the appellants on the issue of minimization. There are a number of factors to consider in determining whether the government has done all it could to avoid unnecessary intrusion. The major factors include the nature and scope of the criminal enterprise under investigation, the government's reasonable expectation of the contents of particular calls, and whether the interception is subject to the authorizing judge's continuing supervision. *United States v. Quintana,* supra at 874–875.

■ All of the important factors were present in the instant case. The criminal enterprise under investigation was a large narcotics conspiracy and the basic purpose of the wiretap was to learn the identity of the many conspirators and to determine the scope of the operation. The government's reasonable expectation of the contents of the calls was that the parties to the conversations would be discussing the buying and selling of heroin.[2] It was not unreasonable

---

**2.** The sophisticated code used by the persons involved in a narcotics conspiracy presents a unique problem because it is difficult to distin-guish at the initial hearing which is innocent and which is relevant to the investigation.

to monitor all the calls for a time to determine which calls were connected to the conspiracy and which were not.[3] Finally, the authorizing judge continued to supervise the interception through receipt of reports on the fifth, tenth and fifteenth days following the authorization order.

The wire interception was handled properly and reasonably in this case and the appellants have failed to show otherwise.

*The Transcripts.*

██ The appellants also appeal from the trial court's decision to allow the government to supply the jury transcripts that coincided with the recordings being played. The transcripts were not introduced into evidence and were in the possession of the jury only at the specific times the tapes were being played.

The appellants contend that the use of transcripts was prejudicial, that the opinions of the agents identifying the voices on the tapes were not supported by proper foundation, and the tapes were very poor recordings containing heavy dialects which made them extremely unreliable.

This court's decision in *United States v. McMillan*, 508 F.2d 101 (8th Cir. 1974), provides procedures by which we can judge the trial court's decision in this case. The court said:

> The best evidence of the conversation is the tape itself; the transcript should normally be used only after the defendant has had an opportunity to verify its accuracy and then only to assist the jury as it listens to the tape. If accuracy remains an issue, a foundation may first be laid by having the person who prepared the transcripts testify that he has listened to the recordings and accurately transcribed their contents * * *. Because the need for transcripts is generally caused by two circumstances, inaudibility of portions of the tape under the circumstances in which it will be replayed or the need to identify the speakers, * * * it may

*United States v. Quintana*, 508 F.2d 867, 874, n. 6 (7th Cir. 1975), and cases cited therein.

be appropriate, in the sound discretion of the trial judge, to furnish the jurors with copies of a transcript to assist them in listening to the tapes. In the ordinary case this will not be prejudicially cumulative * * *. Transcripts should not ordinarily be read to the jury or given independent weight. The trial judge should carefully instruct the jury that differences in meaning may be caused by such factors as the inflection in a speaker's voice or inaccuracies in the transcript and that they should, therefore, rely on what they hear rather than on what they read when there is a difference * * *. [*Id.* at 105–6.]

The procedures set forth above were followed during the trial. The transcripts were not admitted into evidence and the appellants had an opportunity to verify their accuracy before they were used by the jury as it listened to the tapes. The agents who prepared the transcripts sufficiently testified as to their truth and accuracy. In addition, the trial court carefully instructed the jury on at least ten occasions throughout the trial and again at the end. Every time the instructions contained a statement cautioning the jury to remember that the tape was the best evidence, the transcripts were merely an aid, and if there was any difference it was to be resolved in favor of what was heard. Such a procedure was completely in accordance with the procedures approved in *McMillan* and we approve of them in this case.

The appellants make much of the fact that the tapes are difficult to hear and understand because of the heavy dialect, background noises and poor quality of the recording. As requested, the court has listened to virtually all of the tapes played for the jury and it cannot agree with the appellants. The tapes are difficult to understand in some instances because of background noise and the quality of the recording. It is also true that the heavy dialect is difficult to follow at first. However, once the ear is attuned and the listener becomes familiar

**3.** The agents did in fact minimize approximately 130 calls.

with the dialect and inflections, the tapes are not incapable of comprehension and the relevant conversations which were transcribed become clearly understandable. Surely the jury would also be capable of understanding the recordings and making distinctions between the recorded conversations and the transcribed ones, if there were any.

Closely related to this issue is the question of proper identification of the voices heard on the tapes. The appellants feel that since the agents who identified the voices were not experts in voice identification and no electronic analysis or comparisons were made of the tapes, the testimony concerning identification should have been suppressed.

 Voice identification is not a subject of expert testimony. See *Federal Rules of Evidence* 901, note subdivision (b), example 5. "The standards for the admissibility of an opinion as to the identity of a speaker is merely that the identifier has heard the voice of the alleged speaker at any time." *United States v. McMillan, supra* at 105, citing *United States v. Rizzo,* 492 F.2d 443 (2d Cir.), *cert. denied,* 417 U.S. 944, 94 S.Ct. 3069, 41 L.Ed.2d 665 (1974); *Federal Rules of Evidence* 901(b)(5); *McCormick, Evidence* § 226 at 553–555 (Cleary ed. 1972). The voice identifications in this case all met this standard.

Voice exemplars were taken of Caroline Kirk, Eddie Roberts and Beverly Bonds (Marvin Bonds' wife) and compared by the agents to the voices on the intercepted tapes. This comparison provides further support to the agents' capabilities to identify the various speakers.

The credibility and accuracy of the agents' identification was further enhanced by Marvin Bonds. His testimony supported the government's identification of Kirk and Beverly Bonds in the series of conversations involving the three of them. Still further support was received from connecting telephone numbers, addresses and names or nicknames mentioned in the recordings. All these facts added together were sufficient cumulative evidence to submit the

agents' identification testimony to the jury. It was therefore for the jury to determine whether the evidence was sufficiently credible to support the agents' identification of the voices heard.

The proper safeguards were provided in the trial and the trial court did not abuse its discretion in allowing the use of the transcripts to assist the jury or in permitting the agents to testify as to the identification of the various speakers.

*Vagueness of 21 U.S.C. § 848.*

21 U.S.C. § 848 provides imprisonment or fine for any person who engages in a continuing criminal enterprise which is defined as any felony violation of the Drug Abuse statutes which is undertaken in concert with five or more persons of which such person is the manager or organizer and from which he obtains substantial income or resources.

Eugene Kirk claims that this statute is unconstitutionally vague and there was insufficient evidence to convict him under it even if constitutional.

 The courts that have considered this question have ruled in favor of constitutionality. See *United States v. Sperling,* 506 F.2d 1323 (2d Cir. 1974), *cert. denied,* 420 U.S. 962, 95 S.Ct. 1351, 43 L.Ed.2d 439 (1975); *United States v. Sisca,* 503 F.2d 1337 (2d Cir.), *cert. denied,* 419 U.S. 1008, 95 S.Ct. 328, 42 L.Ed.2d 283 (1974); *United States v. Manfredi,* 488 F.2d 588 (2d Cir. 1973), *cert. denied,* 417 U.S. 936, 94 S.Ct. 2651, 41 L.Ed.2d 240 (1974); *United States v. Collier,* 493 F.2d 327 (6th Cir.), *cert. denied,* 419 U.S. 831, 95 S.Ct. 56, 42 L.Ed.2d 57 (1974). We follow these authorities.

 It is well settled that "vagueness challenges to statutes which do not involve First Amendment freedoms must be examined in the light of the facts of the case at hand." *United States v. Mazurie,* 419 U.S. 544, 550, 95 S.Ct. 710, 714, 42 L.Ed.2d 706, 713 (1975). Whenever the statutory "language conveys sufficiently definite warnings as to the proscribed conduct when measured by common understanding and practices," the statute passes constitutional

muster. *Jordan v. DeGeorge,* 341 U.S. 223, 231–232, 71 S.Ct. 703, 708, 95 L.Ed. 886, 892 (1951).

The statute defines a "continuing criminal enterprise" in terms of specified violations, committed by a person who "occupies a position of organizer," which results in "substantial income or resources." The conduct reached, therefore, is only that which the violator knows is wrongful and contrary to law, *United States v. Manfredi, supra* at 602, and "where the punishment imposed is only for an act knowingly done with the purpose of doing that which the statute prohibits, the accused cannot be said to suffer from a lack of warning or knowledge that the act which he does is a violation of the law." *Screws v. United States,* 325 U.S. 91, 102, 65 S.Ct. 1031, 1036, 89 L.Ed. 1495, 1503 (1945). Prerequisite to conviction under Section 848 is the commission of a series of felonies, each involving specific intent. Kirk cannot argue that he did not know his conduct was criminal. *See United States v. Manfredi, supra.*

There was overwhelming evidence at trial establishing Kirk as the leader of a large and active narcotics distribution conspiracy. During the twenty days of the wire interception he received and made an incredible number of calls involving suppliers, distributors and buyers. The evidence established that Kirk dealt in large quantities of heroin and dealt with sufficient money to be able to send agents to New York and California to buy heroin. It was quite obvious that the work occupied Kirk on a more than full time basis, apparently for a number of years. There was sufficient evidence for the jury to convict Kirk of "continuing criminal enterprise" from which he received "substantial income or resources."

*The Jury Selection Plan.*

The appellants contend that the jury selection plan in force in the Eastern District of Missouri violates the Sixth Amendment because it compiles the list of potential jurors from voting lists after each presidential election, thereby excluding from service those persons who reach voting age during the interim. It is also contended that the plan fails to prescribe an alternative source for the selection of additional names, as required by the provisions of the Jury Selection and Service Act of 1968, 28 U.S.C. § 1861 *et seq.*

This court has held similar arguments to be without merit: "persons aged eighteen to twenty are not an identifiable group the exclusion of which renders a jury list nonrepresentative of the community and violative of the Fifth and Sixth Amendments." *United States v. Olson,* 473 F.2d 686, 688 (8th Cir.), *cert. denied,* 412 U.S. 905, 93 S.Ct. 2291, 36 L.Ed.2d 970 (1973). Additionally, the United States Supreme Court specifically rejected an identical claim in *Hamling v. United States,* 418 U.S. 87, 138, 94 S.Ct. 2887, 2917, 41 L.Ed.2d 590, 632 (1974), stating that "some play in the joints of the jury-selection process is necessary in order to accommodate the practical problems of judicial administration."

An alternative source of additional names is not required by the jury selection statutes except to carry out the purposes of the Act. 28 U.S.C. § 1863(b)(2). In the instant case we are not faced with a violation of these purposes. The specified purposes include a jury selected at random from a fair cross section of the community, without discrimination on account of race, color, religion, sex, national origin or economic status. 28 U.S.C. §§ 1861, 1862. The exclusion of persons age eighteen to twenty-one does not render a jury list nonrepresentative of the community and does not violate the purposes of the Act. *Hamling v. United States, supra; United States v. Olson, supra.* Therefore, an alternative source is not required. *See United States v. Freeman,* 514 F.2d 171 (8th Cir. 1975), and cases cited therein.

*The Jury Instructions.*

Appellants find fault with a number of the instructions given by the trial judge. Evaluating each separately, we find little merit in their position.

■ The instruction given by the trial court defining reasonable doubt did not constitute reversible error. The appellants assert that the sentence in the court's instruction which stated "It is not required that the government prove guilt beyond all possible doubt[.]" is error. However, this court has expressly held that such language is not improper. *United States v. Stead,* 422 F.2d 183 (8th Cir.), *cert. denied,* 397 U.S. 1080, 90 S.Ct. 1534, 25 L.Ed.2d 816 (1970); *Friedman v. United States,* 381 F.2d 155 (8th Cir. 1967).

■ It is also asserted that the instruction defined reasonable doubt as proof that would make a person willing to rely or act, rather than as proof which would make a person hesitate to act. The appellants take a mistaken view of the instruction. The court specifically stated that it was the kind of doubt "that would make a reasonable person hesitate to act." Even if further statements appeared, in a limited extent, to change it to "willing to rely," it is still not reversible error. While it has been stated that reasonable doubt is best defined in terms of hesitation, this court has clearly held that the giving of an instruction worded in terms of willingness to act—particularly if coupled with one expressed in terms of hesitation to act—is not reversible error. *United States v. Dixon,* 507 F.2d 683 (8th Cir. 1974); *United States v. Williams,* 505 F.2d 947 (8th Cir. 1974); *United States v. Dunmore,* 446 F.2d 1214 (8th Cir. 1971), *cert. denied,* 404 U.S. 1041, 92 S.Ct. 726, 30 L.Ed.2d 734 (1972); *see Holland v. United States,* 348 U.S. 121, 75 S.Ct. 127, 99 L.Ed. 150 (1954). When viewed as a whole, it is clear that the instructions adequately conveyed the concept of reasonable doubt to the jury.

■ The instructions concerning circumstantial evidence were substantially the same as that given in *Devitt and Blackmar, Federal Jury Practice and Instructions,* § 11.02 (2d ed. 1970), and were proper. The instructions requested by the appellants stated "[y]ou should not find the defendant guilty unless the facts and circumstances proved are consistent with each other and the guilt of the defendant, and inconsistent with any reasonable theory of his innocence." This court has consistently held that a defendant is not entitled to an instruction that circumstantial evidence must exclude every reasonable hypothesis other than guilt, when a proper reasonable doubt instruction is given. Such instructions are confusing and incorrect. *United States v. Pugh,* 509 F.2d 766 (8th Cir. 1975); *United States v. Fryer,* 419 F.2d 1346 (8th Cir.), *cert. denied,* 397 U.S. 1055, 90 S.Ct. 1399, 25 L.Ed.2d 672 (1970); *see Holland v. United States, supra.*

■ The appellants assert that two of the instructions concerning conspiracy and the acts and declarations of co-conspirators were unduly repetitious, confusing and therefore prejudicial. Conspiracy and the existence thereof was the major issue at trial. The majority of the evidence involved acts and declarations of the co-conspirators. If the trial court would have limited the instructions to the two paragraphs the appellants say were proper, the court would have been ignoring its function to completely instruct the jury. Considering the magnitude of this case, we do not believe the instructions were excessively lengthy. Even if they were, length and magnitude in a charge are not necessarily improper, and do not constitute reversible error in the absence of a showing of prejudice. *United States v. McCraken,* 488 F.2d 406 (5th Cir. 1974); *United States v. Birnbaum,* 373 F.2d 250 (2d Cir.), *cert. denied,* 389 U.S. 837, 88 S.Ct. 53, 19 L.Ed.2d 99 (1967).

■ The court's instruction that "[e]ven a single act may be enough to draw a defendant within the ambit of a conspiracy, where it is established that defendant knew of the conspiracy and associated himself with it" was a correct statement of the law and was not improper. *See United States v. Hester,* 465 F.2d 1125 (8th Cir. 1972). This is especially true in light of the court's additional instruction that the act must be done knowingly and intentionally and the defendant's specific intent proved beyond a reasonable doubt.

The appellants' contention that the refusal of the trial court to give either of the two instructions offered concerning identification testimony borders on frivolity. The appellants contend that the two alternative instructions they offered were modifications of the standard forms provided in *Federal Jury Practice and Instructions, supra,* §§ 11.32 and 11.32A. They were more than mere modifications of those standard instructions. It was definitely not an abuse of discretion for the court to refuse. The instruction given by the court was virtually identical to the standard instruction shown in Section 11.32A and was most complete. *See United States v. Inge,* 161 U.S.App.D.C. 183, 494 F.2d 1102 (1974).

Appellants' final contention regarding jury instructions is that the trial court erred in refusing to give an absent witness instruction permitting the jury to infer from the government's failure to produce three named witnesses that their testimony would be unfavorable to the government. The propriety of such an instruction is largely within the discretion of the trial court. *United States v. Williams,* 481 F.2d 735 (8th Cir.), *cert. denied,* 414 U.S. 1026, 94 S.Ct. 453, 38 L.Ed.2d 318 (1973). In view of the fact that appellants made no adequate showing that the government possessed the sole power to produce these witnesses, and did not, in any event, make any timely request that these witnesses be produced, it is clear that the trial court did not err in refusing to give the requested instruction. *Walker v. United States,* 489 F.2d 714 (8th Cir.), *cert. denied,* 416 U.S. 990, 94 S.Ct. 2399, 40 L.Ed.2d 769 (1974).

### The Pre-Trial Publicity.

A review of the record establishes that there was no prejudicial pre-trial publicity as contended by the appellants. The jury was extensively questioned on the issue of publicity, and was admonished frequently by the court not to "read, see, hear or listen to any report from the news media in any way, shape, form or fashion" and to ignore anything that might accidently be seen.

The appellants have the burden of showing any essential unfairness in the adjudicatory process unless the totality of the circumstances raises the probability of prejudice. *United States v. McNally,* 485 F.2d 398 (8th Cir. 1973), *cert. denied,* 415 U.S. 978, 94 S.Ct. 1566, 39 L.Ed. 874 (1974). It is clearly apparent that they cannot do so here, and the trial court did not err in refusing to declare a mistrial. *See United States v. Delay,* 500 F.2d 1360 (8th Cir. 1974).

### The Seizure of Evidence.

The appellants' contention that the evidence seized during searches at 6145 Lalite and 5979 Summit was seized under an invalid search warrant is also without merit.

The ten-page affidavit set forth in great detail the evidence the DEA agents had developed during the investigation, including the purchases by Nofles, the recorded telephone conversations plus additional corroborative evidence. In view of this overwhelming evidence, which showed a continuing heroin distribution operation in the Lalite residence, and involving the Summit residence, there was clearly probable cause for the issuance of the search warrant less than two weeks after the termination of the wire interceptions. The affidavit needed only to "establish the probability of criminal activity and secreting of evidence on specific premises, not proof beyond a reasonable doubt." *United States v. Smith,* 462 F.2d 456 (8th Cir. 1972); *United States v. Harris,* 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971); *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1959). The affidavit in this case more than met those standards.

### The Revocation of Bonds for Kirk and Barnett.

A review of the record in the bail revocation hearing establishes that the trial court had ample ground to revoke the bonds of Kirk and Barnett. A trial court has the inherent power to confine defendants to protect witnesses and to prevent defendants from tampering with the wit-

nesses. *United States v. Cozzetti,* 441 F.2d 344 (9th Cir. 1971). It is also clear that there is no absolute right to release on bail prior to or during trial. *United States v. Smith,* 444 F.2d 61 (8th Cir. 1971).

 Based on substantial evidence introduced in the revocation hearing, the trial court had ample grounds for believing that Kirk and Barnett were involved in the deaths of three witnesses prior to trial. It was well within its discretion to revoke the bonds.

 The appellants allege that the revocation denied them effective counsel. However, they cite no specific instances of prejudice except for the inconvenience caused their attorneys of traveling thirty or so miles to communicate with their client. This is not an unconstitutional denial of effective counsel.

*The Identification of Heroin Exhibits.*

 There is no indication in the record that the government chemists used anything other than the standard tests in analyzing and identifying the suspected heroin. The appellants' contention that the trial court should have made a determination concerning the general acceptance in the scientific community of such identifications is without merit. *See United States v. Nelson,* 499 F.2d 965 (8th Cir. 1974); *Moreno v. United States,* 391 F.2d 280 (5th Cir. 1968), and the contention that foundation should have been provided as to the scientific principle utilized in tape recorders and the reliability and general scientific acceptance of such machines is frivolous.

The trial court is affirmed as to all errors assigned.