UNITED STATES of America, Appellee,

v.

Russell V. LOSING, Jr., Appellant.

UNITED STATES of America, Appellee,

v.

Donald Ray FEICK, Appellant.

Nos. 76–1040, 76–1045.

United States Court of Appeals,
Eighth Circuit.

Submitted June 14, 1976.

Resubmitted March 14, 1977.

Decided Aug. 10, 1977.

Rehearing and Rehearing En Banc
Denied Sept. 14, 21, 1977.

Irl B. Baris and Kenneth H. Graeber, St. Louis, Mo., on supplemental brief, for Donald Ray Feick.

Bernard Steinger, Clayton, Mo., for appellants.

Barry A. Short, U.S. Atty. and Richard E. Coughlin, Asst. U.S. Atty., St. Louis, Mo., on supplemental brief, for appellee.

Before VAN OOSTERHOUT, Senior Circuit Judge, and LAY and HENLEY, Circuit Judges.

VAN OOSTERHOUT, Senior Circuit Judge.

These direct criminal appeals are now before us for plenary review following proceedings in the district court pursuant to our order of partial remand dated July 30, 1976. *United States v. Losing*, 539 F.2d 1174 (8th Cir. 1976). We affirm.

In our prior opinion we held that defendants-appellants Donald Ray Feick and Russell Victor Losing, Jr., were entitled to an evidentiary hearing for the purpose of determining whether a Government wiretap complied with the minimization requirement of 18 U.S.C. § 2518(5). The district court has conducted the hearing and has certified to us its findings of fact and conclusions of law, dated January 20, 1977, to the effect that the wiretap complied with the stated requirement. The parties have filed supplemental briefs with respect to the January 20 order.

We also consider additional contentions advanced by the defendants when the appeal was originally submitted and not considered in our prior opinion. These are:

II. The affidavit in support of the wiretap application failed to show that normal investigative procedures had been tried and failed, as required by 18 U.S.C. § 2518(1)(c).

III. Cross-examination of key Government witness Joseph Cranage was improperly restricted at trial.

IV. Defense motions for severance should have been granted.

V. There was insufficient evidence to sustain a conviction.

A number of the pertinent facts are set forth in our prior opinion and need not be repeated here. To the extent that additional facts are pertinent to the issues remaining for consideration, we relate them in due course.

I.

The minimization hearing required under our order of partial remand was conducted by the district court on September 9, 1976. The Assistant United States Attorney and the drug enforcement agent who supervised the intercept were both extensively examined and cross-examined at the hearing. Copies of reports to Judge Regan, who authorized the wiretap initially, were introduced into evidence, as were the daily reports prepared by the supervisory agent and the log book prepared by the monitoring agents. The original tapes were similarly available to the court and the parties.

After considering the entire record, the district court found the following facts: (1) the supervising attorney gave detailed instructions to the agents who operated the wiretap that all calls of a privileged nature or "innocuous" in content were to be mini-

mized; (2) the agents actually minimized between 79 and 81 calls; (3) the total number of *completed* calls was 1208, of which approximately 400 were drug-related and a very substantial number of those remaining were less than two to three minutes in length[1]; (4) written reports, containing a breakdown of the number of calls received, their nature, and whether they were minimized, were given to Judge Regan at five-day intervals; and (5) the objectives of the intercept had not been achieved in full when it was terminated on December 27, 1974, upon disconnection of the target telephone. The district court further noted that sixteen persons were ultimately indicted and at least fifty considered for indictment, that identifying the various voices and interpreting the language of the drug business presented considerable problems for the monitoring agents, and that the defendants "often mixed business with pleasure" during their telephone conversations.

Confronted with the above facts, the court below concluded:

> In this context it must be concluded that the Government's efforts at minimization were more than sufficient. In fact, as the supervising agent testified, some conversations which were minimized in part were found later to be drug-related. Certainly, some conversations were recorded that were completely "innocuous." However, considering the total number of calls intercepted and the scope of the investigation, those "innocuous" calls

were far too few in number to affect the validity of the intercept.

The factfindings detailed above are supported by substantial evidence and are not clearly erroneous, and the legal conclusion just quoted is fully consonant with the principles set forth in our prior opinion, 539 F.2d at 1180–81. The district court properly determined that the wiretap in this case complied with the minimization requirement of 18 U.S.C. § 2518(5).[2]

## II.

Eighteen U.S.C. § 2518(1)(c) requires that an application for an order authorizing the interception of a wire communication include "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous." Defendants contend that the wiretap application in this case, presented to Judge Regan on December 13, 1974, failed to comply with this requirement.

As noted in our prior opinion, the central figure in the drug conspiracy under investigation was Joseph Cranage. The affidavit which accompanied the wiretap application in this case explained that the Government's primary interest was to determine Cranage's source or sources of supply of controlled substances, his method of delivery and distribution, and the location or locations where his immediate supply of drugs was kept. According to the affidavit,

---

1. With some exceptions, the agents would normally intercept approximately the first two to three minutes of a call. At least in a case such as this, where the alleged conspiracy involves numerous persons whose identity is difficult to ascertain, we are satisfied that this practice complies with the statute. *Cf. United States v. Harvey*, 540 F.2d 1345, 1351 (8th Cir. 1976) (similar practice upheld with respect to private wiretap by a telephone company pursuant to 18 U.S.C. § 2511(2)(a)(i)).

2. Defendants also contend that the trial court erred in terminating the minimization hearing following the testimony of two witnesses and in restricting the length of cross-examination of the second witness. As noted in our prior

opinion, the extent of inquiry to be permitted at the hearing was within the trial court's discretion. 539 F.2d at 1181. Counsel for defendant Feick was permitted roughly fifty minutes of cross-examination of the second witness, slightly more than the time consumed by Government counsel on direct examination. Counsel for defendant Losing was afforded additional time for cross-examination. Redirect examination by Government counsel was not permitted. We are satisfied that the court below afforded all parties a fair opportunity to develop their arguments, that extension of the hearing would have resulted in repetition and cumulation, and that there was no abuse of discretion. See also Fed.R.Evid. 403.

a prior wiretap of Eugene Kirk and others[3] had revealed that Cranage was being supplied with heroin by Kirk but that Cranage had additional sources of supply for cocaine, which the Kirk wiretap had not revealed. The affidavit similarly explained that exhaustive physical surveillance and extensive records checks, details of which were related in the body of the affidavit, had proved unproductive in uncovering the desired facts. The affidavit further related that attempts to consummate an actual purchase from Cranage would likely have been futile, since Cranage would in all probability seek to ascertain the would-be purchaser's true identity prior to any sale; in any event, even if a purchase were completed, it would not disclose Cranage's distribution network.

The pertinent standards under 18 U.S.C. § 2518(1)(c) have been set out on several recent occasions by this court. *United States v. Jackson*, 549 F.2d 517, 537 (8th Cir. 1977); *United States v. Matya*, 541 F.2d 741, 745 (8th Cir. 1976); *United States v. Daly*, 535 F.2d 434, 438 (8th Cir. 1976); *United States v. Kirk*, 534 F.2d 1262, 1274 (8th Cir. 1976). In *United States v. Daly*, we said:

> We recognize that Congress intended these sections to restrict wiretaps to those which are necessary as well as reasonable. But Congress did not require the exhaustion of "specific" or "all possible" investigative techniques before wiretap orders could be issued. Congress prohibited wiretapping only when normal investigative techniques are *likely* to succeed *and* are not too dangerous. "Merely because a normal investigative technique is theoretically possible it does not follow that it is likely." Sections 2518(1)(c) and 2518(3)(c) are only designed to ensure that wiretapping is "not to be routinely employed as the initial step in criminal investigation" and " * * * to assure that wiretapping is not resorted to in situations where traditional investigative techniques would suffice to expose the crime." The Government's showing must, of course, be tested in a "practical

and commonsense fashion." And as in other suppression matters, considerable discretion rests with the judge to whom the wiretap application is made.

535 F.2d at 438 (citations omitted).

The wiretap application in this case complied with 18 U.S.C. § 2518(1)(c).

## III.

The primary Government witness at trial was Joseph Cranage. According to his own testimony, Cranage had been a large-scale distributor of heroin. He had, prior to the trial below, pled guilty to three counts of using a telephone in furtherance of a drug conspiracy, had been sentenced to three-year concurrent terms, and had been paroled after eleven months. He had been assured that he would not be further prosecuted for past drug crimes, notwithstanding the fact that he was named in twenty-five counts of the indictment in this case, including the conspiracy count. He had also been given assurances of Government assistance in relocating and sustaining himself for a short time. All of these matters were thoroughly brought out on direct and especially cross-examination, and the jury was accordingly well aware of the witness' character and his reasons for testifying.

Notwithstanding the wide latitude given to defense counsel to explore the above matters on cross-examination, defendants claim that the cross-examination was improperly restricted. The primary basis for this contention is the district court's refusal to allow questioning concerning Cranage's possible participation in the murder of a Government informant. Out of the presence of the jury, defense counsel was permitted to voir dire the witness for the purpose of determining whether any deals had been made with the Government in connection with the alleged murder. When the voir dire proved unproductive in disclosing any such deals, the court ruled that questioning about the witness' speculative involvement in a murder would not be permitted, but that defense counsel re-

3. See *United States v. Kirk*, 534 F.2d 1262 (8th Cir. 1976).

mained free to examine the witness concerning any deals he had made with the Government. This ruling was well within the trial court's discretion. *United States v. Kirk*, 496 F.2d 947, 949–50 (8th Cir. 1974).

■ Defendant Feick further contends that the district court improperly restricted cross-examination of Cranage by inhibiting defense counsel's efforts to establish that prior statements by Cranage to Government agents did not implicate Feick in illicit drug traffic. We can discern no such restriction at all. During cross-examination, Cranage first testified that he didn't recall whether his prior statements implicated Feick. When a number of the statements were placed before him, however, he acknowledged the absence of Feick's name therein. The district court did not prevent defense counsel from using this procedure with respect to any or all of the statements, although it did rule that the statements themselves would not be received in evidence, a ruling prompted at least in part by defendant Losing's objection that his name was mentioned in the statements. Feick does not assign this ruling as error but complains instead that Cranage's responses to the effect that he didn't recall whom he had previously implicated were "vague" and that Government counsel refused to stipulate that Cranage had not previously mentioned Feick. Feick does not explain on appeal what the district court could or should have done about either of these difficulties. In any event, we find no restriction on cross-examination as alleged.

## IV.

■ Defendants contend that the Government failed to make a submissible case that a single conspiracy existed and that the district court was accordingly compelled to grant their motions for severance under *Kotteakos v. United States*, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946). They emphasize that the evidence against them was separate and distinct, that (with the exception of the conspiracy count) they were not both named in any single count of the indictment, and that they didn't even know each other during the period of the indictment. A similar argument was made and rejected in *United States v. Kirk, supra*, 534 F.2d at 1269–72. Here, as there, the evidence, viewed in the light most favorable to the verdict, was more than sufficient for the jury to find a single conspiracy in which both defendants participated. Unlike *Kirk*, where we held jury instructions on multiple conspiracies unnecessary, the jury in this case received such instructions and it rejected defendants' contention. The district court's refusal to grant a severance under *Kotteakos* was not error.

■ It is axiomatic that persons charged with engaging in a conspiracy should be tried together, particularly where proof of the defendants' complicity in the conspiracy is based on the same evidence and acts. *United States v. Jackson, supra*, 549 F.2d at 523; *United States v. Graham*, 548 F.2d 1302, 1310 (8th Cir. 1977). Although severance will be allowed upon a showing of real prejudice to a defendant, the motion to sever is addressed to the discretion of the trial court, and a denial of severance is not grounds for reversal unless clear prejudice and an abuse of discretion are shown. *United States v. Jackson, supra* at 523; *United States v. Graham, supra* at 1310–11.

Although defendants are correct in maintaining that the proof of their complicity in the conspiracy is based largely on independent evidence and acts, we do not pause to consider whether the degree of prejudice which need be shown in that circumstance is somewhat less than would be the case if proof of their complicity were based on the same evidence and acts. Whether or not this is so, the district court still retains considerable discretion in matters of severance, and real and substantial prejudice must be shown to warrant reversal on appeal. Nothing in this case comes close to that.

■ Feick contends he was prejudiced when Losing's counsel questioned Cranage regarding heroin going from one C. L. Richardson to Feick. The questioning was brief

and disclosed little else. Feick's defense was that he was a heroin addict who purchased heroin only for his own habit, which at times reached $300 a day. The fact that Feick may have obtained heroin from Richardson was hardly prejudicial.

▆ Feick also contends he was prejudiced when the district court refused to permit the introduction into evidence of previous statements by Cranage which did implicate Losing and numerous other co-conspirators but which did not implicate Feick. As already noted, this problem was partially alleviated when Cranage acknowledged that a number of the statements omitted any mention of Feick, and Feick's counsel was free to seek similar acknowledgments with respect to the remaining statements. Moreover, we think Feick's counsel successfully made the point that numerous other persons played more prominent roles in the conspiracy than did Feick. The prejudice, if any, was *de minimis.*

▆ Finally, Feick contends he was prejudiced by the facts that the evidence against Losing was much stronger than that against Feick, that Losing was not a heroin addict or user, and that Losing could thus offer no explanation for his drug trafficking. The argument is without merit. A defendant is not entitled to severance merely because the evidence against a co-defendant is more damaging than the evidence against him; severance becomes necessary where the proof is such that a jury could not be expected to compartmentalize the evidence as it relates to separate defendants. *United States v. Jackson, supra* at 525. It is clear that compartmentalizing the evidence in this case presented no difficulties for the jury. The offenses with which Feick and Losing were charged were, with the exception of the conspiracy charge, distinct. The defendants' respective voices appeared in separate intercepted telephone conversations. Cranage was extensively cross-examined by counsel for each defendant. Both defendants took the stand on their own behalf, and the defenses were widely divergent. The jury instructions distinguished the two cases with considerable care. The district court's refusal to sever was not an abuse of discretion.

Losing, as noted in our prior opinion, elected to rely on Feick's brief on this appeal. Understandably, Feick's brief does not purport to demonstrate any prejudice to Losing as a result of the joint trial. Losing has accordingly failed to preserve any such issue for review. In any event, our examination of the record has uncovered no such prejudice.

## V.

▆ Lastly, Feick contends there was insufficient evidence to sustain any of the convictions against him.[4] Feick was convicted on one count of conspiring, in violation of 21 U.S.C. § 846, to manufacture, distribute and dispense heroin and on four counts of using a telephone to facilitate the conspiracy, in violation of 21 U.S.C. § 843(b) and 18 U.S.C. § 2. He was sentenced to three-year concurrent terms on all convictions and to a three-year special parole on the conspiracy conviction.

We of course view the evidence in the light most favorable to the verdict and accept as established all reasonable inferences to support the conviction. *United States v. Scholle,* 553 F.2d 1109, 1118 (8th Cir. 1977). The evidence overwhelmingly established the existence of a conspiracy to distribute heroin during the time period named in the indictment. Cranage testified that he and his confederates had purchased heroin in large quantities and had distributed it to numerous persons. This testimony was not substantially disputed.

▆ Once the existence of a conspiracy has been established, even slight evidence connecting a particular defendant to the conspiracy may constitute proof of the defendant's involvement in the scheme to render him culpable. *Id.* Feick admits he was

---

4. Losing has failed to preserve this issue for review. In any event, the evidence amply supported his convictions.

a heroin addict and that he used the telephone to purchase heroin for his own use. He contends, however, that he was not a participant in any conspiratorial activity to supply heroin to others. The jury was instructed: "even if you believe the Defendant Feick may have violated the law by purchasing or possessing heroin, such purchase or possession is not the offense charged in the indictment and you may not find the Defendant Feick guilty on the basis of such evidence. . . ." The jury obviously rejected Feick's defense. There was ample evidentiary basis for its doing so.

Cranage testified on at least four occasions that Feick distributed heroin.[5] In addition, the telephone conversations which formed the basis of the substantive charges against Feick reveal efforts by Feick to purchase heroin with Cranage and other conspirators, in one case with the expressed intention (in Cranage's words) to "deal off most of it." Although the series of conversations with Cranage apparently did not result in a purchase, let alone a subsequent sale, the conversations are unquestionably probative of Feick's alleged role in the conspiracy.[6] The evidence was accordingly sufficient to permit the jury to discredit Feick's testimony that he was a mere user.

Each of the remaining arguments raised by Feick with respect to the conspiracy charge concerns interpretation of the evidence adduced at trial. In no instance can we say that the Government failed to make a submissible case.

We are similarly satisfied that each of the telephone conversations which formed the basis of the substantive charges against Feick under § 843(b) was sufficient to make out a submissible case that Feick used the telephone to facilitate the conspiracy. Feick contends that § 843(b) should not be construed to make use of a telephone

to facilitate a conspiracy a crime. The argument is without merit.

The judgments appealed from are affirmed.

---

5. Transcript at 374: "For a period of time [Feick was a user and an addict and I was selling drugs to him]. Then the relationship changed and he went into distribution."

Transcript at 375: "[Feick] was buying from Tom Kimbel and reselling and he offered to sell to me on numerous occasions."

Transcript at 376: "[Feick] was using more and more drugs, yes, sir, and then he started to support his habit by selling."

Transcript at 385: "[Feick] went more and more into distribution."

6. These telephone conversations all occurred during the period of time named in the conspiracy count of the indictment.