**UNITED STATES of America,
Appellee,**

v.

**William HESTER and Faye Frances
Witherspoon, Appellants.**

**No. 71–1616.**

United States Court of Appeals,
Eighth Circuit.

Submitted June 12, 1972.

Decided Aug. 28, 1972.

Samual Rabah, St. Louis, Mo., Harry Roth, Clayton, Mo., for appellants.

William C. Martin, Asst. U. S. Atty., St. Louis, Mo., Daniel Bartlett, Jr., U. S. Atty., for appellee.

Before VAN OOSTERHOUT, Senior Circuit Judge, and LAY and HEANEY, Circuit Judges.

HEANEY, Circuit Judge.

William Hester and Faye Frances Witherspoon challenge their convictions arising out of a conspiracy to distribute narcotics. At their trial, Joseph Nardoni, an alleged coconspirator,[1] testified that he had agreed to supply a group of buyers (actually federal agents) with heroin. Nardoni, in the presence of Hester, made arrangements for the agents to come to St. Louis to receive the drugs. Hester was to attempt to obtain narcotics, and he and Nardoni were to split any profits. After the arrival of the agents in St. Louis, Nardoni informed them that he was sending a "lieutenant" (Hester) to supply them with a sample of the narcotics. According to the testimony of these agents, Hester, accompanied by Witherspoon, came to their motel room and delivered this sample. Subsequent testing revealed it to contain a small amount of heroin.

On the same day as the delivery of the sample, Hester returned to the motel and made specific plans for the transfer of more narcotics. Later, he delivered a packet to the agents at a nearby parking lot in exchange for $9,000. Witherspoon followed Hester in her own car to another parking lot near the delivery point. The government contended that in doing so, she acted as a lookout for Hester. After the delivery, as other federal agents approached, Witherspoon drove off and a siren within her car sounded. She was captured following a chase. Hester also drove off after the delivery, and was captured at his home.

Subsequently, it was determined that the packet contained ordinary flour rather than heroin. The $9,000 was never recovered. Hester and Witherspoon were indicted and convicted on two counts: (1) violating 21 U.S.C. § 846 by conspiring to distribute narcotics in violation of 21 U.S.C. § 841(a)(1), and (2) violating 21 U.S.C. § 841(a)(1) by distributing 190 miligrams of narcotics (the sample).[2]

---

1. Nardoni was indicted on three counts: (1) for violating 21 U.S.C. § 846 by conspiring to violate 21 U.S.C. § 841(a)(1); (2) for violating 21 U.S.C. § 841(a)(1); and (3) for violating 21 U.S.C. § 843(b) by using the telephone to facilitate the distribution of heroin. He pled guilty to Count III, and the other two counts were dismissed.

2. Each of the defendants was given consecutive five-year sentences on each count. Because of this, it is necessary for us to consider the issues raised with respect to each of the counts.

   The defendants contend that the conspiracy count should have merged into the substantive count, and that there should have been a conviction on only one count. However, ordinarily even when a defendant is charged with a substantive crime and a conspiracy to commit the same crime, the conspiracy and substantive counts are separate offenses and the defendant may be convicted of both. Callanan v. United States, 364 U.S. 587, 81 ton v. United States, 328 U.S. 640, 66 S. Ct. 1180, 90 L.Ed. 1489 (1946); United States v. Long, 449 F.2d 288 (8th Cir. 1971), cert. denied, 405 U.S. 974, 92 S.Ct. 1206, 31 L.Ed.2d 247 (1972). The defendants have suggested no reason why we should depart from this rule in the present case, nor have they questioned the pro-

The defendants first argue that the evidence introduced to convict them under Count II was insufficient because it failed to prove that the sample was actually delivered to the agents. We think, however, that the testimony of the agents was clearly sufficient proof that the sample was delivered in furtherance of the conspiracy to assure the buyers that the conspirators would be able to secure the drugs. It was for the jury and not for us to evaluate the credibility of this testimony.

The defendants next argue that there is insufficient evidence to prove that Witherspoon knew of the conspiracy. The defendants state that Nardoni did not know of Witherspoon's participation in the transaction, and that there is no evidence to show that Witherspoon had actual knowledge of Nardoni's activities or other details of the conspiracy. However, to find that the defendant had participated in a conspiracy, it is not necessary to prove that she knew all of the coconspirators or was aware of all the details of the conspiracy. See, United States v. Friedman, 445 F.2d 1076, 1080 (9th Cir.), cert. denied, 404 U.S. 958 (1971); Isaacs v. United States, 301 F.2d 706, 725 (8th Cir.), cert. denied, 371 U.S. 818, 83 S.Ct. 32, 9 L.Ed.2d 58 (1962).

> " * * * [A] coconspirator may even become a member of the conspiracy without being in on it at its inception. One need only knowingly contribute his efforts in furtherance of it. * * * "

Nassif v. United States, 370 F.2d 147, 152 (8th Cir. 1966). Accord, Langel v. United States, 451 F.2d 957, 961 (8th Cir. 1971).

Here, Witherspoon admits that she drove Hester to the meeting at which the sample was delivered, and that she was present while it was transferred and plans for future deliveries were made. But she testified that her presence was innocent, that she spent her time watching television, and that she did not understand the nature of the transaction. In contrast, the federal agents testified that Witherspoon discussed the quality of the narcotics and participated in planning future deliveries in which she was to take an active part. Again, the conflict between the testimony of the agents and that of Witherspoon was for the jury to resolve. The testimony of the agents, together with the circumstantial evidence, was sufficiently clear and unequivocal to support a finding that Witherspoon knowingly contributed her efforts in furtherance of the conspiracy.

The defendants also contend that the trial court erred in failing to instruct the jury that Nardoni's in-court testimony which implicated Hester would not be admissible against that defendant. However, the defendants did not object to this testimony at trial, or request any instruction in regard to it. Even on appeal, the defendants have failed to specify their objections. Ordinarily the testimony of a coconspirator with regard to facts within his knowledge is admissible, where, as in this case, the defendants have the opportunity to cross-examine. See, United States v. Gower, 447 F.2d 187, 192 (5th Cir.), cert. denied, 404 U.S. 850, 92 S.Ct. 84, 30 L.Ed.2d 88 (1971); Developments in the Law—Criminal Conspiracy, 72 Harv. L.Rev. 920, 984 (1959). Cf., United States v. Scurlock, 448 F.2d 721 (9th Cir. 1971); United States v. Canta-La Luz, 443 F.2d 413 (9th Cir. 1971). The problems involved in the admission of an out-of-court confession of a coconspirator are not present in this case. See, Blumenthal v. United States, 332 U.S. 539, 68 S.Ct. 248, 92 L.Ed. 154 (1947); Manual on Jury Instructions—Criminal, 33 F.R.D. 523 § 6.12–1 (1963), and the cases cited therein. See also, Bruton v.

---

priety of the sentences imposed. See, United States v. Johnson, 334 F.Supp. 982 (W.D.Mo.1971); ABA Standards, Sentencing Alternatives and Procedures §

3.4 (Approved Draft, 1968); 2 C. Wright, Federal Practice and Procedure: Criminal § 527, at 419–420 (1969).

United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). In view of these facts, we cannot say that the trial court's actions constituted plain error.

Finally, the defendants allege that the trial court unfairly limited its cross-examination of several witnesses concerning an alleged beating of Hester by federal agents and the activities of an alleged informer, Agnes Brittain. The record indicates that the trial court allowed full exploration of these areas in relation to the transactions in question. The record also suggests that the defendants' attorney acceded without objection to most of the trial court's suggestions relating to the cross-examination. There has been no abuse of the trial court's discretion in limiting cross-examination into these collateral matters. See, United States v. Bensinger Company, 430 F.2d 584, 591 (8th Cir. 1970); Blumenfield v. United States, 284 F.2d 46, 55 (8th Cir. 1960), cert. denied, 365 U.S. 812, 81 S.Ct. 693, 5 L.Ed. 2d 692 (1961).

Affirmed.