**UNITED STATES of America, Plaintiff,**

v.

**James Farrell SMITH, Defendant.**

**UNITED STATES of America, Plaintiff,**

v.

**Jean GRISTEAU, Defendant.**

**Nos. 78–Cr–157, 78–Cr–158 and 78–Cr–161.**

United States District Court,
E. D. Wisconsin.

Jan. 8, 1979.

Joan F. Kessler, U. S. Atty. by Elizabeth Adelman, Milwaukee, Wis., for plaintiff.

Angermeier & Rogers by Mark J. Rogers, Milwaukee, Wis., for Smith.

Thomas E. Bush, Milwaukee, Wis., for Gristeau.

## DECISION and ORDER

MYRON L. GORDON, District Judge.

These actions have been consolidated before me on the motions of the defendants, both American Indians, to dismiss the indictments or to stay the proceedings in these cases. The defendants' motions are based upon alleged deficiencies in this district's "Plan for the Random Selection of Grand and Petit Jurors." The defendants allege that the plan does not comport with constitutional and statutory requirements in connection with grand and petit jury panels in this district in that it fails to provide adequate numbers of two groups: (1) American Indians and (2) American Indians residing on the Menominee Reservation in Menominee, Wisconsin. Pursuant to 28 U.S.C. § 1867, an evidentiary hearing has been held. For the reasons which follow, the defendants' motions will be denied.

Although the defendants challenge this district's jury selection plan as violative of both the Jury Selection and Service Act of 1968, 28 U.S.C. § 1861 et seq., and the fifth and sixth amendments to the United

States Constitution, I need not consider the constitutional and statutory claims separately, since the requirements have been construed as being functionally equivalent. *United States v. Test*, 550 F.2d 577, 584 (10th Cir. 1976). *See also Taylor v. Louisiana*, 419 U.S. 522, 528–30, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975). Section 1861 of the Act provides:

"It is the policy of the United States that all litigants in Federal courts entitled to trial by jury shall have the right to grand and petit juries *selected at random from a fair cross section of the community* in the district or division wherein the court convenes." (emphasis added).

■ In order to demonstrate a violation of the "fair-cross section" standard, the defendants must show that Indians or Indians residing on the Menominee Reservation (1) constitute distinctive groups in this district, (2) that these groups are systematically excluded from the jury selection process, and (3) that as a result of such exclusion, the jury pools in this district fail to be reasonably representative of the community. *Taylor v. Louisiana*, 419 U.S. at 538, 95 S.Ct. 692; *United States v. Test*, 550 F.2d at 585.

## I. COGNIZABILITY

[3, 4] To prevail on their claims of underrepresentation and denial of equal protection, the defendants must demonstrate that there is systematic exclusion or discrimination against a cognizable group. In determining whether a group is cognizable for the purposes of a challenge to a jury selection plan, the following factors are pertinent. First, there must exist some quality or attribute which defines or limits the alleged group; second, there must exist cohesiveness of attitudes, ideas or experience which distinguishes the group from the general social milieu; and third, a community of interest must be present which may not be represented by other segments of the populace. *United States v. Guzman*, 337 F.Supp. 140, 143–44 (S.D.N.Y.), aff'd, 468 F.2d 1245 (2d Cir. 1972), cert. denied, 410 U.S. 937, 93 S.Ct. 1397, 35 L.Ed.2d 602 (1973).

■ With respect to the first group, American Indians, I am persuaded that each of the three factors mentioned have been established. I do not believe, however, that the second group, Indians residing on the Menominee Reservation is a cognizable group for the purposes of this challenge to this district's jury selection plan.

In my opinion, Menominees residing on the reservation are a group whose interests will be represented by other segments of the populace, in particular by other Indians living outside of the reservation. The record indicates that many of the Indians living in the eastern district of Wisconsin outside of the Menominee Reservation migrated to their present residences from the reservation. Much of the testimony in this case contradicts the defendants' claim that the cultural differences between Indians living on the reservation and those living elsewhere in the district are substantial. For instance, one witness testified that most of the Menominees living outside of the reservation attempt to keep in close contact with the reservation by returning to it as often as possible. Moreover, several witnesses testified that the cultural differences between the Menominees and members of other Indian tribes residing in this district are minimal when compared to the differences between non-Indian and Indian cultures. Therefore, for the purposes of this case, I find that Indians residing on the Menominee Reservation do not constitute a community of interest apart from American Indians.

## II. SYSTEMATIC EXCLUSION

The defendants allege that three provisions of the district's jury selection plan systematically exclude Indians from juries in this district. Before examining the impact of each of these provisions, a brief description of the eastern district of Wisconsin will be given.

### A. Factual Background

The eastern district of Wisconsin is composed of three divisions, Milwaukee, Osh-

kosh, and Green Bay. All three of the judges presently serving the district sit in Milwaukee. The total population of the district according to 1970 census figures was 2,768,113. The Indian population in the district was 12,420 or approximately 0.45% of the total population. Approximately 65% of the total population in the district was over the age of eighteen and therefore eligible to sit on a federal jury. 28 U.S.C. § 1865(b)(1). By contrast, approximately 48% of the Indian population is over the age of eighteen. Therefore, in a totally random selection of persons above the age of 18 in the district, the chance of any one juror being an Indian is less than 0.45%.

## B. Use of Voter Registration Lists

Jurors for both grand and petit juries in this district are selected from a pool of names taken at random from lists of persons who registered to vote or who voted in the 1976 November general election. This procedure is in compliance with 28 U.S.C. § 1863(b)(2). Section 1863(b)(2) further provides that juror selection plans "shall prescribe some other source or sources of names in addition to voter lists *where necessary* to foster the policy and protect the rights secured by sections 1861 and 1862 of this title." (emphasis added).

The defendants in this case do not claim that the voting registration laws of Wisconsin discriminate against Indians in any way. Rather the defendants contend that Indians vote with less frequency than the general population and, thus, urge that both the Constitution and statutes require that a supplemental source of names be used for jury selection to insure that Indians are not underrepresented on juries in this district.

■ I am persuaded that the defendants' contention is incorrect. The courts of appeals in at least six circuits have held that neither statutes nor the Constitution require that a supplemental source of names be added to voter lists simply because an identifiable group votes in a proportion lower than the rest of the population. *United States v. Test,* 550 F.2d 577, 586 (10th Cir. 1976); *United States v. Freeman,* 514 F.2d

171 (8th Cir. 1975); *United States v. Lewis,* 472 F.2d 252 (3rd Cir. 1973); *United States v. Guzman,* 468 F.2d 1245 (2d Cir. 1972), cert. denied, 410 U.S. 937, 93 S.Ct. 1397, 35 L.Ed.2d 602 (1973); *United States v. Ross,* 468 F.2d 1213 (9th Cir. 1972), cert. denied, 410 U.S. 989, 93 S.Ct. 1500, 36 L.Ed.2d 188 (1973); *Camp v. United States,* 413 F.2d 419 (5th Cir.), cert. denied, 396 U.S. 968, 90 S.Ct. 451, 24 L.Ed.2d 434 (1969).

Furthermore, I do not believe that the defendants have adequately shown that Indians in the eastern district of Wisconsin vote in smaller proportions than the general population of the district. While several of the defendants' witnesses asserted their view that Indians vote less frequently than the general population, none of those witnesses substantiated their claims with actual voting figures. Moreover, the few voting figures which were introduced into evidence contradict the defendants' claim. In the 1976 general election, Menominee County, which has a higher proportion of Indians than any other county in the district (88%), also had the highest voting percentage of any county in the district (85.48% of the adult population voted). Thus, the defendants are not entitled to relief on the basis of their contention that Indians vote in smaller proportions than the rest of the population in the eastern district.

## C. The One Hundred Mile Exemption

Section 8 of this district's jury selection plan provides that "the Court shall grant excuses [from jury duty] upon individual request from anyone who is . . . a person who resides more than 100 miles from the place court is held." The defendants maintain that this provision results in the underrepresentation of Indians on juries in this district.

Section 8 as quoted above was written pursuant to 28 U.S.C. § 1863(b)(7) which, at the time of the impanelment of the grand jury which indicted these defendants, provided that district jury selection plans should

". . . fix the distance, either in miles or in travel time, from each place of

holding court beyond which prospective jurors residing shall, on individual request therefor, be excused from jury service on the ground of undue hardship in traveling to the place where the court is held."

Mileage exemptions enacted by district courts pursuant to § 1863(b)(7) and exempting jurors residing within a much smaller radius than 100 miles have been previously upheld. *United States v. Lewis*, 504 F.2d 92 (6th Cir. 1974), cert. denied 421 U.S. 975, 95 S.Ct. 1974, 44 L.Ed.2d 466 (1975) (upholding 70 mile exemption); *United States v. Valentine*, 472 F.2d 164 (9th Cir. 1973) (upholding a 45 mile exemption).

However, the defendants claim that § 1863(b)(7) was repealed before the defendants in these cases were indicted and that, therefore, the indictments were obtained in violation of the Jury Selection and Service Act. On November 2, 1978, the President signed into law P.L. 95–572, an amendment to the Jury Selection and Service Act, which, among other provisions, deleted the mileage exemption provision previously in force. Section 7(a) of the new law provided that its provisions were to "apply with respect to any grand or petit juror summoned for service or actually serving on or after the date of enactment of this Act." Since the defendants in these cases were indicted after November 2, 1978, the Act's date of enactment, they contend that the indictments against them must be dismissed.

■ I do not believe that the defendants' contention is correct. In my judgment, the mileage provision of the new law has no impact on the grand jury which indicted the defendants at bar. That grand jury was impaneled before November 2, 1978. The mileage provision of the new law is applicable to jurors summoned or serving after November 2, 1978. In my opinion, the provision does not affect those persons who exercised their right to claim the mileage exemption in effect before November 2, 1978, and who thus were neither summoned nor served after that date. Those jurors actually serving on the grand jury as of November 2, 1978, did not previously exercise their option to claim the mileage exemption if applicable, and their status is unaffected by the new law's deletion of that exemption. Thus, the grand jury sitting in this district as of November 2, 1978, was legally impaneled, and its validity was not altered on that date by the new law. This conclusion is supported by the fact that it is unreasonable to believe that Congress intended to invalidate all actions taken after November 2, 1978, by every jury in the numerous districts which had mileage exemptions.

■ Furthermore, I find that the defendant did not suffer any substantial harm by being indicted by a grand jury impaneled while this district's mileage exemption was in effect. That exemption was granted on a non-discriminatory basis to non-Indians as well as Indians. The defendants have not persuaded me that a substantially higher proportion of Indians than non-Indians exercised the mileage exemption option. Thus, the elimination of the exemption should not greatly increase the percentage of Indians on jury panels in this district. In absolute terms, the elimination of the mileage exemption would seldom, if ever, add more than one Indian to a jury pool.

Finally, the percentage of Indians residing in those portions of this district within 100 miles of Milwaukee is not significantly lower than the percentage of Indians residing in the entire district. The parties have stipulated that, with the exception of Manitowoc and Calumet Counties and a portion of Brown County, the Green Bay division lies more than 100 miles from Milwaukee, where trials in this district are held. The Oshkosh and Milwaukee divisions both lie within 100 miles of Milwaukee. The total population of the Milwaukee and Oshkosh divisions and Manitowoc and Calumet Counties according to the 1970 census was 2,443,973. The total Indian population for the same area was 6,737 or .28% of the total population. As noted previously, Indians comprise approximately 0.45% of the population of the entire district.

In *Swain v. Alabama,* 380 U.S. 202, 208, 85 S.Ct. 824, 829, 13 L.Ed.2d 759 (1965), the Court concluded that "[n]either the jury roll nor the venire need be a perfect mirror to the community or accurately reflect the proportionate strength of every identifiable group." In *Swain,* a black defendant demonstrated that although 26% of the residents eligible for jury duty in the county were black, only 10–15% of the grand and petit juries over a substantial period of years had been black. Despite the disparity in the percentages, the Court stated, "[w]e cannot say that purposeful discrimination based on race alone is satisfactorily proved by showing that an identifiable group in a community is underrepresented by as much as 10%." Id. at 208–09, 85 S.Ct. at 829. In the case at bar, the disparity between the percentage of Indians living in the district and the percentage living within 100 miles of Milwaukee is not so great as that found in *Swain.*

■ Thus, I am persuaded that the grand jury which indicted the defendants at bar was properly impaneled. I also find that the mileage exemption contained in this district's jury selection plan did not systematically exclude Indians and therefore did not substantially harm the defendants. While the defendants claim that the combined effect of the 100 mile exemption and the use of voting lists is systematically to exclude Indians from juries in this district, they have not established that these provisions, either alone or in combination, substantially distort the cross section of persons selected for jury venires in this district.

D.   Selection of Petit Jurors

■ The defendants also complain of the fact that petit jurors in this district are in general only selected from the Milwaukee division. However, the Jury Selection and Service Act specifically provides for splitting a district into divisions and using only one division's jury wheel for petit juries:

". . . all litigants in federal court entitled to trial by jury shall have the right to grand and petit juries selected at random from a fair cross-section of the community in the district *or division wherein the court convenes."* (emphasis added). 28 U.S.C. § 1861.

Likewise, a petit jury may be drawn constitutionally from only one division and not the whole district. *Ruthenberg v. United States,* 245 U.S. 480, 38 S.Ct. 168, 62 L.Ed. 414 (1918); *United States v. Cates,* 485 F.2d 26, 29 (1st Cir. 1974). Thus, I do not believe that the defendants' claim with regard to the selection of petit jurors entitles them to relief.

III.   EQUAL PROTECTION

■ Pursuant to an order of the judges of this district, the clerk of court in picking names for the jury wheel selects a larger proportion of names from eight designated wards in the city of Milwaukee than she would if the selection process were perfectly random. The purpose of this weighting is to increase the number of Blacks in jury pools in this district. The defendants allege that this weighting violates their right to equal protection since the same sort of weighting is not done with regard to Indians.

I find the defendants' equal protection argument unimpressive. In the absence of measures such as weighting, it is uncontradicted that jury panels in this district would not represent a fair cross-section of the population of this district due to an underrepresentation of Blacks. The same cannot be said with regard to Indians. The defendants have failed to make a prima facie showing that the existing jury selection plan in this district leads to the systematic underrepresentation of Indians on jury panels. Thus, they have also failed to show that their right to equal protection has been violated.

CONCLUSION

Therefore, IT IS ORDERED that the motions of James Farrell Smith and Jean Gristeau for dismissal of the indictments or a stay of the proceedings against them be and hereby are denied.