**STATE of Missouri, Respondent,**

v.

**Charles ALEXANDER, Appellant.**

**No. 62502.**

Supreme Court of Missouri,
En Banc.

Sept. 8, 1981.

Blair Buckley, Jr., Public Defender, Caruthersville, for appellant.

John Ashcroft, Atty. Gen., Nancy Kelly Baker, Asst. Atty. Gen., Jefferson City, for respondent.

RENDLEN, Judge.

Convicted of possession and the sale of methaqualone, a controlled substance, and sentenced to concurrent terms of 20 years, defendant's challenge to the constitutionality of Missouri's talesman statute, § 494.250, RSMo 1978, brings his appeal to this Court. Art. V, § 3, Mo.Const.

As error, defendant contends: (1) The trial court improperly restricted direct examination by ordering defense counsel not to refer to his witness as an informant unless the witness' credibility came in issue; and (2) the jury selection procedure denied defendant's right to an impartial jury mandated by Art. I, § 18(a), Mo.Const. and to one selected from a fair cross-section of the community, as required by the Sixth and Fourteenth Amendments to the United States Constitution.

During 1979, James Clayton Lee, Jr., a trooper with the Missouri State Highway Patrol, posing as a drug purchaser, conducted an undercover narcotics investigation in Pemiscot County, using the assumed name of Jim Clayton. Having first met defendant during September, 1979, on December 7 of that year, Lee went with John Mansfield to defendant's home in Caruthersville. The three men entered defendant's bedroom and Mansfield asked if "[defendant] had any more of those quaaludes". Defendant responded in the affirmative, whereupon Lee asked, "How much do you want for those?",

indicating a clear plastic bag containing about 30 white tablets. Defendant replied, "$5.00 apiece" and Lee stated he would buy six pills. Defendant handed Lee six of the tablets, and Lee paid him $30. Placing the tablets in his left shirt pocket, Lee immediately left defendant's house with Mansfield. The tablets were taken to Jefferson City, where a Highway Patrol chemist identified them as methaqualone, a Schedule II controlled substance.

### I.

Defendant complains of the trial court's following direction to defense counsel, who had indicated his intention to call Mansfield as a witness,

> [you are] not to refer to John Terry Mansfield as an informant of the Missouri State Highway Patrol unless and until his credibility comes, becomes in issue; that is, if the defendant wishes to qualify to treat him as a hostile witness or if the, in cross-examination, the Prosecuting Attorney puts his credibility in issue, and if that happens, at that time, then you may refer to him or recall any witnesses to examine them concerning his status.

Testifying for defendant, Mansfield explained that they had visited defendant's home on December 7, 1979, but stated he saw no exchange of drugs or money. On further inquiry by defense counsel whether Mansfield had *ever* seen an exchange between defendant and Lee, Mansfield, then facing felony charges, asserted his Fifth Amendment privilege justifiably refusing to answer. On cross-examination Mansfield acknowledged the purpose of their visit to defendant's home was to purchase quaaludes, and he had been a close friend of defendant for 27 years. His re-direct consisted merely of an averment that his previous testimony was true. Defendant, who also testified, gave his version of the events which in part tracked that of Mansfield's, but claimed that while Lee had sought to buy drugs on other occasions, defendant had never sold drugs to him.

 It must be emphasized that defendant called Mansfield as *his* witness and the court's limiting instruction went to that direct examination. The testimony of Mansfield paralleled that of defendant's concerning the incident and he manifested no hostility. Under these circumstances he was not subject to impeachment by defendant, *State v. Burrow*, 514 S.W.2d 585, 588 (Mo. 1974); *State v. Castino*, 264 S.W.2d 372, 375 (Mo. 1954), and testimony of his status as an informant was inadmissible at that time. Similarly, testimony bolstering the witness whose credibility had not been attacked would not have been admissible. *State v. Christian*, 570 S.W.2d 819 (Mo.App. 1978). Thus, defendant's stated intention to introduce evidence of Mansfield's informant status was premature, and absent a showing of hostility or an attack by the State on Mansfield's credibility, an attempt so to do would have been subject to objection.

 Defendant also suggests that somehow the trial court's order prevented his effective cross-examination of agent Lee. The relevance of Mansfield's informant status to an attack on Lee's version of the incident is not readily apparent, *State v. Harris*, 620 S.W.2d 349 (Mo. banc 1981) and any inquiry of Lee on such collateral matters would also have been subject to proper objection. *United States v. Hester*, 465 F.2d 1125, 1128 (8th Cir. 1972).

Finally, we note that *Roviaro v. United States*, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957), relied on by defendant, is inapposite. *Roviaro* prescribes rules for disclosure by the State of an informant's identity, a matter unrelated to the issue before us. Defendant's contention is denied.

### II.

Defendant next attacks the constitutionality of the sheriff's actions under § 494.-250, RSMo 1978, as violative of his right to trial by an impartial jury guaranteed by Art. I, § 18(a) of the Missouri Constitution, and to a jury selected from a fair cross-section of the community mandated by the Sixth and Fourteenth Amendments to the

United States Constitution.[1] From the Jury Commissioners' master list of 48 regular and alternate jurors, 31 were successfully served with summons.[2] Of this number, several having previously been excused, only 22 appeared in court on the date of defendant's trial. On order of the court, the sheriff was then able to procure five additional panelists, apparently from the lists, raising the number to 27.[3] From this array, 6 were excused leaving 21, whereupon the court ordered an additional "venire of six." By early afternoon, the sheriff responded with five "bystanders" as special veniremen. On examination, two of these were excused and from the remaining 24 a jury of 12 was selected and sworn. Throughout these proceedings defendant's motions to "quash jury panel" were overruled.

■ Our Legislature has provided that if, after the petit juror list has been exhausted either by absences or excuses for cause, the number of remaining veniremen is less than the 24 required by § 494.250.1, RSMo 1978, the sheriff on order of the court "demanding a jury shall summon petit jurors during the term from the bystanders ..." § 494.-250.2, RSMo 1978. The validity of this means of veniremen selection has been determined and the process approved absent a specific showing of prejudice. *State v. Johnson*, 606 S.W.2d 655 (Mo. 1980). Further, one alleging such prejudice is burdened with proving his assertions. *State v.*

*Holt*, 592 S.W.2d 759 (Mo. banc 1980). Accord, *State v. Anderson*, 620 S.W.2d 378 (Mo. 1981).

■ Defendant's challenge is directed not so much to the statute's facial validity, as to the result of the veniremen selection process. He charges the sheriff chose a disproportionate number of "bystander" jurors from one locality, thereby impairing defendant's right to a jury selected from a fair cross-section of the community. Defendant contends that approximately 90% of the new prospective jurors selected by the sheriff (including those from the lists and the five bystanders) were residents of Hayti and Hayti Heights, while only some 25% of the veniremen originally drawn from the Board of Jury Commissioners' master list were from this vicinity.[4]

■ The Sixth Amendment to the United States Constitution, now declared applicable to the States through the Fourteenth Amendment, contemplates that a criminal defendant be tried by a jury selected from a fair cross-section of the community. *Taylor v. Louisiana*, 419 U.S. 522, 527–28, 95 S.Ct. 692, 696–97, 42 L.Ed.2d 690 (1975). To prove a violation of this requirement, defendant must demonstrate that (1) the persons allegedly excluded constitute a distinctive class in the community, (2) the representation of this class in the array does not fairly and reasonably relate to their numbers in the community, and (3)

1. § 494.250.1, RSMo 1978, provides that the Clerk of the Board of Jury Commissioners shall draw "the names of twenty-four persons who shall serve as petit jurors at the next ensuing term of court ... and the names of twenty-four persons to be designated as alternate petit jurors ...."
 § 494.250.2 then directs that "the sheriff when ordered by the court demanding a jury shall summon petit jurors during the term from the bystanders, after the list of alternate petit jurors has been exhausted."

2. That portion of the record involving impaneling of the jury discussed hereafter is patently vague and uncertain. For example, 31, at one point appears to have been the number summoned at the beginning of the term, while elsewhere it seems the number notified by the sheriff immediately before this trial. Several of

defendant's factual assertions bear scant support in the record, but we nevertheless have afforded him the favorable factual assumptions in such instances.

3. The sheriff had been directed to call eight, but three evidently did not appear.

4. We note that at trial defendant's claim centered solely on the second phase of his attack on appeal, that the sheriff's interest precluded his right to trial by an impartial jury. It is only on appeal that defendant asserts that a disproportionate number of veniremen resided in one locality. Though a defendant ordinarily may not broaden his trial objection on appeal, *State v. Barnes*, 543 S.W.2d 557, 559 (Mo.App. 1976), we nonetheless examine the assertions in this respect for error, albeit plain.

this under-representation results from systematic exclusion of the group in the jury selection process. *Duren v. Missouri*, 439 U.S. 357, 364, 99 S.Ct. 664, 668, 58 L.Ed.2d 579 (1979); *United States v. Kennedy*, 548 F.2d 608, 614 (5th Cir. 1977), *cert. denied*, 434 U.S. 865, 98 S.Ct. 199, 54 L.Ed.2d 140; *United States v. Smith*, 463 F.Supp. 680, 682 (E.D. Wis. 1979). Defendant's allegations that the utilized process violated the fair cross-section standard fail in at least two respects. First, the group claimed to be under-represented does not constitute a distinctive or cognizable class for purposes of the constitutional question. In determining whether such a class exists, the following factors are pertinent: (1) some quality or attribute defining or limiting the class; (2) a cohesiveness of attitudes, ideas or experiences distinguishing the class from the general social milieu; and (3) the presence of a community of interest which may not be represented by other segments of the populace. *United States v. Smith*, 463 F.Supp. 680, 682 (E.D. Wis. 1979). Here the thrust of defendant's claim is that persons residing outside the Hayti or Hayti Heights areas (the allegedly under-represented class) constitute a distinctive class for purposes of the fair cross-section requirement. However, nothing appears distinguishing such persons from the residents of the named communities, and absent such showing (and we are unable to perceive how it may be inferred), defendant's claim must be denied. *See, United States v. Smith, id.*, where it found that Indians residing on the Menominee Reservation do not constitute a class distinct from American Indians.

In the second place, defendant has failed to demonstrate that any exclusion of veniremen residing outside Hayti and Hayti Heights resulted in a jury panel not reasonably representative of the community. While defendant may have shown that persons selected by the sheriff had a higher incidence of residence in Hayti and Hayti Heights than persons on the Jury Commissioners' master list, we are not provided with the percentage in the relevant population of persons residing outside those communities. Accordingly, defendant's conten-

tions also fail for want of showing disproportionality. *See, Duren v. Missouri*, 439 U.S. 357, 364, 99 S.Ct. 664, 668, 58 L.Ed.2d 579 (1979).

Finally, it has been held that exclusion of veniremen from a geographical area is not per se violative of the Sixth Amendment to the United States Constitution. *See, United States v. Young*, 618 F.2d 1281, 1288 (8th Cir. 1980), *cert. denied*, 449 U.S. 844, 101 S.Ct. 126, 66 L.Ed.2d 52.

▮▮▮▮ For the second phase of his constitutional attack, defendant asserts that the sheriff's selection of veniremen prevented drawing the jury panel from a fair cross-section of the community because his alignment with the state necessarily produced an assembly of conviction prone talesmen. To mount this charge of bias, defendant must demonstrate a professional or personal interest on the part of the sheriff, prejudicing defendant. *State v. Holt*, 592 S.W.2d 759, 768 (Mo. banc 1980); *State v. Johnson*, 606 S.W.2d 655, 658 (Mo. 1980). In the case at bar, the sheriff manifested none of the traditional indicia of interest, such as involvement in the investigation, special knowledge enabling him to select prosecution oriented jurors or testimony helpful to the State. Instead, the record indicates all investigatory aspects of the case were conducted by the Missouri State Highway Patrol. Defendant presents neither allegation nor proof of the talesman bias or even of their acquaintance with the sheriff. *State v. Holt*, 592 S.W.2d 759, 768 (Mo. banc 1980); *State v. Johnson*, 606 S.W.2d 655, 657–58 (Mo. 1980). In this connection defendant's reliance on *Henson v. Wyrick*, 634 F.2d 1080 (8th Cir. 1980), *cert. denied*, 450 U.S. 958, 101 S.Ct. 1417, 67 L.Ed.2d 383 (1981), as abrogating our previous decisions approving talesmen by the sheriff is ill founded. There the dispositive facts rendering the jury selection process constitutionally infirm was the sheriff's scheme to select his acquaintances for jury duty and his deputies' responsibility for investigation of Henson's case. *Id.* at 1081. Further, in *Ross v. Wyrick*, 581 F.2d 172 (8th Cir. 1978), also cited by defendant, the master list was

suspect and the sheriff's practice of selecting veniremen to reduce its discriminatory impact could not cure the defect.

Affirmed.

DONNELLY, C. J., and WELLIVER, MORGAN and HIGGINS, JJ., concur.

BARDGETT, J., concurs in separate concurring opinion filed.

SEILER, J., concurs in result and concurs in separate concurring opinion of BARDGETT, J.

BARDGETT, Judge, concurring.

I concur in the result reached in this case but I believe the statements in the principal opinion regarding the appellant's right to elicit testimony concerning Mansfield's, the informant, status or task at the time of the offense are overbroad and, perhaps, dicta.

Pretrial rulings regarding evidentiary matters are sometimes helpful to an orderly trial but are not conclusive as procedural rights change as different evidence is elicited.

If a person's name or conduct is not mentioned to the jury, then it seems clear that that person's credibility never becomes an issue. Here, when the trooper identified Mansfield as the person who accompanied the trooper and testified to certain statements Mansfield made in connection with the drug purchase, it would clearly have been proper for defense counsel to ask the trooper what Mansfield's position and task was in connection with this arrest. He, Mansfield, could have been another trooper, a deputy sheriff, or some other type of assistant—such as he was in this case. But that question was never asked then or when Mansfield testified. I do not regard the trial judge's pretrial ruling as conclusively preventing the defense counsel from inquiry as to the status, occupation, position, etc., of a participant in the transaction and arrest. But the question simply was never asked. Maybe it was purposely not asked. In any event, I do not believe it was prejudicial in view of Mansfield's testimony in this case.

With respect to the issue relating to the sheriff being sent out to select and summon additional jurors, it should be noted that courts in rural areas experience this difficulty from time to time and I believe there should be a better method devised to handle the problem. The principal opinion suggests the sheriff was a *disinterested* person with respect to this trial. The sheriff is the chief law enforcement official in the county and in my opinion can never be regarded as totally unbiased regarding a criminal prosecution, regardless of what agency did the investigation. Sheriffs want prosecutions to be successful and work with the prosecuting attorney to that end on a day-by-day basis.

Allowing the sheriff to select the additional veniremen tends to jeopardize the validity of a conviction and in my opinion ought not to be done. There is, however, nothing in this case to evidence any bias in the selection of the additional veniremen by the sheriff.