John **FITTANTO** and Teresa Fittanto, Individually and as Parents of Sara Fittanto, a Minor Child, and Teresa Fittanto, as Mother and Next Friend of Marie Lodge, a Minor Child, Plaintiffs,

v.

Pamela **KLEIN**, Individually and in her Official Capacity as a Staff Person at the Children's Advocacy Center, et al., Defendants.

No. 91 C 6934.

United States District Court, N.D. Illinois, E.D.

March 18, 1992.

1452

James T. McGuire, Spina, McGuire & Okal, Elmwood Park, Ill., Charles E. Hervas, James Gus Sotos, Michael William Condon, Michael D. Bersani, Schirott & Associates, P.C., Itasca, Ill., Mary Patricia Needham, Marita Clare Sullivan, Illinois Atty. General's Office, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

HART, District Judge.

### I. FACTS

Defendants bring this motion for dismissal pursuant to Rule 12(b)(6). Therefore, all allegations made by plaintiffs are taken as true and related accordingly. *Yeskigian v. Nappi*, 900 F.2d 101, 102 (7th Cir. 1990). Plaintiff John Fittanto is the father of Sara Fittanto ("Sara"), born July 10, 1990, and the step-father of Marie Lodge ("Marie"), born September 2, 1984. Plaintiff Teresa Fittanto is the natural mother of both Sara and Marie.[1]

On Sunday, October 15, 1989, Kristina Lopez ("Kristina"), who lived next door to the Fittantos and was then age five, was playing with Marie at the Fittanto home. John Fittanto was at a Chicago Bears football game. The next day, Monday, while at school, Kristina told her teachers that John Fittanto had sexually abused her in the bathroom of the Fittanto home. That evening, at approximately 6:10 p.m., Kristina was interviewed at defendant Children's Advocacy Center (the "Advocacy Center") by defendant Sandy Trumpinski, a social worker at the Advocacy Center, and defendant Jorge L. Martinez, a police officer for defendant Village of Hanover Park. At this interview, Kristina alleged that John Fittanto had "touched her private parts" over her panties in the Fittantos' bathroom while John Fittanto was fully clothed. Kristina also claimed that Marie told her that John Fittanto did the same thing to her.

James D. Montgomery, Jean M. Templeton, James D. Montgomery & Associates, Ltd., Chicago, Ill., for plaintiffs.

Vincent C. Cipolla, William W. Kurnik, Kurnik, Cipolla, Stephenson & Barasha, Arlington Heights, Ill., Charles L. Lowder, Mary Kay Scott, Robert P. Vogt, Bullaro, Carton & Stone, Chicago, Ill., Timothy Harold Okal, John D. Spina, Anthony F. Spina,

---

1. The Fittantos sue both individually and as parents of Sara. Additionally, Teresa Fittanto sues as mother and next friend of Marie.

Three days later, on October 19, 1989, defendant Pamela Klein, an employee of the Advocacy Center, and Trumpinski conducted a second interview of Kristina. Officer Martinez monitored this interview. The allegations remained the same. A third interview was conducted by Klein on October 24, 1989, which Officer Martinez again monitored.[2] At this interview, Kristina's story changed dramatically. Kristina alleged various activities involving blood, feces, urine, the devil, death threats, videotape, various sexual acts, and the presence of other men.

After this interview, on October 24, 1989, Klein called the Illinois Department of Children and Family Services' ("DCFS") Hotline and reported Kristina's allegations. Defendant Eunice Smith, a DCFS supervisor, assigned the case to defendant Al Ragland, a DCFS employee.[3] On October 27, 1989, three days later, Klein again interviewed Kristina. Defendants Trumpinski and Officer Martinez also monitored this interview. During this interview, Kristina's allegations included even more acts than alleged in the previous interview.

Based solely upon Kristina's allegations,[4] on October 30, 1989, Officer Martinez of the Village of Hanover Park and Sergeant Fieroh of the Illinois State Police arrested John Fittanto at his place of employ. At that time, the Fittantos agreed to a consensual search of their home, during which no evidence was found.

As a result of a decision by the DCFS defendants Ragland and Smith, Marie was taken from the Fittanto home and placed in the custody of Teresa Fittanto's ex-husband. Marie was not returned to the Fittantos until May of 1991. During the time that Marie was out of their custody, John Fittanto was not allowed to see Marie at all and Teresa Fittanto was allowed only limited supervised visits with Marie. Sara Fit-

tanto was born during the pendency of the criminal proceedings against John Fittanto. Within 24 hours of her birth, the DCFS issued a seizure order to the hospital and John Fittanto was not allowed to see his newborn child. As a consequence of the seizure order, Teresa Fittanto moved into her mother's home to care for Sara.

In April of 1991, a hearing was held concerning DCFS's custody of Sara and Marie. At the conclusion of the hearing, no grounds were found to prevent the return of Marie and Sara to the Fittantos. Subsequently, the criminal charges against John Fittanto were dismissed. Plaintiffs now bring suit pursuant to 42 U.S.C. § 1983 and the First, Fourth and Fourteenth Amendments against Klein, Officer Martinez, Sergeant Fieroh, and DCFS employees Ragland and Smith, in their individual capacities; Klein and Trumpinski in their official capacities; the Village of Hanover Park; the Advocacy Center; Hanover Township, which funds the Advocacy Center; and Hanover Park Mental Health Board, which directed and supervised the Advocacy Center.

Defendants Pamela Klein in both her individual and official capacity; Village of Hanover Park; Al Ragland in his individual capacity; Eunice Smith in her individual capacity; and Sergeant Wayne Fieroh in his individual capacity now move to dismiss plaintiffs' complaint. Because Pamela Klein's employer, the Advocacy Center, is sued, the claim against Pamela Klein in her official capacity is dismissed. *See Brandon v. Holt*, 469 U.S. 464, 471–72, 105 S.Ct. 873, 878, 83 L.Ed.2d 878 (1985) (suing a government official in her official capacity is the same as suing the government entity itself).[5]

## II. MOTION TO DISMISS

 Dismissal under Federal Rule of Civil Procedure 12(b)(6) for failure to state

---

**2.** There is no indication that social worker Trumpinski or any other persons were present at this interview.

**3.** Plaintiffs allege that Klein conducted another interview of Kristina on the next day, October 25, 1989, which Trumpinski, Ragland, Officer Martinez, defendant Sergeant Wayne Fieroh who is an Illinois State Police employee, and

others monitored. According to plaintiffs, no record of this interview exists.

**4.** No medical or physical evidence was found to support Kristina's allegations.

**5.** In their reply papers, plaintiffs concede dismissal of Klein in her official capacity.

a claim is appropriate if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Strauss v. City of Chicago*, 760 F.2d 765, 767 (7th Cir.1985) (*quoting Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957)). When presented with a motion to dismiss, a court construes pleadings liberally, and mere vagueness or lack of detail does not constitute a sufficient ground for dismissal. *Strauss*, 760 F.2d at 767. Nonetheless, a complaint must state either direct or inferential allegations concerning all of the material elements necessary for recovery under the relevant legal theory. *Papapetropoulous v. Milwaukee Transp. Services*, 795 F.2d 591, 594 (7th Cir.1986). In deciding a motion to dismiss, factual allegations of the complaint, as well as any reasonable inferences drawn from them, are taken as true. *Neumann v. John Hancock Mut. Life Ins.*, 736 F.Supp. 182, 183 (N.D.Ill. 1990).

### III. THE VILLAGE'S MOTION TO DISMISS: MUNICIPAL LIABILITY

■ The Village argues that it has no constitutional duty to protect plaintiffs from Kristina Lopez's allegations of sexual abuse. This is true. The Village has no constitutional duty to protect "citizens against invasion by private actors." *See DeShaney v. Winnebago County DSS*, 489 U.S. 189, 195, 109 S.Ct. 998, 1003, 103 L.Ed.2d 249 (1989); *see also Archie v. City of Racine*, 847 F.2d 1211 (7th Cir.), *cert. denied*, 489 U.S. 1065, 109 S.Ct. 1338, 103 L.Ed.2d 809 (1988). The Village, however, misapprehends plaintiffs' allegations. Plaintiffs do not allege that the Village failed to protect them from private actors. Rather, plaintiffs allege that the Village failed to train its police officers concerning allegations of sexual abuse and relations with the Advocacy Center. Plaintiffs allege that Village officers acted without proper training and in accord with an express Village policy to rely on the investigation of the Advocacy Center. In failing to train its police force properly concerning claims referred to the Advocacy Center,

plaintiffs allege that the Village violated plaintiffs' constitutional rights. Thus, *DeShaney* is inapposite.

Plaintiffs allege that the Village has an express policy of referring investigation of certain classes of criminal activity to an untrained group—the Advocacy Center. It is alleged that this policy allows the Advocacy Center to investigate criminal cases and determine whether the Village will, or will not, pursue criminal charges against an individual. Plaintiffs allege that such a policy is unconstitutional and the Village's referral policy resulted in a deprivation of plaintiffs' constitutional rights. The essence of plaintiffs' complaint is that the Village's policy of failing to train its officers resulted in the Advocacy Center directing Officer Martinez's arrest of John Fittanto—an arrest that plaintiffs allege was without probable cause and in violation of Mr. Fittanto's constitutional rights.

■ If the Village failed to train its police officers in the proper procedure for handling referrals and arrests in sexual abuse cases such that its failure to train may be found to amount to a deliberate indifference to plaintiffs' rights, the Village may be held liable under § 1983. *City of Canton v. Harris*, 489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989) (only where a failure to train reflects a "deliberate" or "conscious" choice by the municipality can the failure be properly thought of as an actionable city "policy." The focus must be on whether the program is adequate to the tasks the particular employees must perform, and if it is not, on whether such an inadequate training program can justifiably be said to represent "city policy."); *see also Pembaur v. Cincinnati*, 475 U.S. 469, 483–84, 106 S.Ct. 1292, 1300, 89 L.Ed.2d 452 (1986) ("[M]unicipal liability under § 1983 attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives". Moreover, the identified deficiency in the training program must be closely related to the ultimate injury.) *City of Canton, supra*. There must be a "direct causal link" between the policy

and the alleged constitutional deprivation. *Id.*

■ If a municipality completely fails to train its police force so that police misconduct is inevitable, the municipality exhibits "deliberate indifference" to the violations of its citizens' constitutional rights. *See Leite v. City of Providence,* 463 F.Supp. 585, 590–91 (D.R.I.1978) (test for deliberate indifference in failure to train cases); *see generally City of Oklahoma City v. Tuttle,* 471 U.S. 808, 820–24, 105 S.Ct. 2427, 2434–37, 85 L.Ed.2d 791 (1985) (policy must be the "moving force" behind constitutional violation); *DiLoreto v. Borough of Oaklyn,* 744 F.Supp. 610 (D.N.J.1990) (city liable for failure to train officers concerning proper procedure in strip searches). If plaintiffs' injury resulted from a complete lack of training of the police force such that Officer Martinez was not properly trained to handle sexual abuse cases referred to the Advocacy Center, plaintiffs' injury may be the result of the Village's deliberate and conscious indifference to the plaintiffs' Fourth and Fourteenth Amendment rights.

In reply, the Village states that Officer Martinez determined that probable cause existed—the Advocacy Center did not. However, on a motion to dismiss, plaintiffs' allegations are taken as true. *See Neumann v. John Hancock Mut. Life Ins.,* 736 F.Supp. 182, 183 (N.D.Ill.1990). Taking the plaintiffs' allegations as true, as this court must on a motion to dismiss, the Village of Hanover Park's motion to dismiss must be denied.

---

**6.** *Burns v. Reed* resulted in reconsideration of *Buckley v. Fitzsimmons,* 919 F.2d 1230 (7th Cir. 1990) in which the Seventh Circuit extended absolute witness immunity to expert witnesses for their pretrial preparation. *See Buckley v. Fitzsimmons,* 919 F.2d 1230 (7th Cir.1990), *vacated and remanded for reconsideration in light of Burns v. Reed,* 500 U.S. ——, 111 S.Ct. 1934, 114 L.Ed.2d 547, —— U.S. ——, 112 S.Ct. 40, 116 L.Ed.2d 19 (1991), *on remand* 952 F.2d 965 (7th Cir.1992). On remand, the Seventh Circuit concluded that *Burns v. Reed* did not affect its original holding in *Buckley v. Fitzsimmons* saying:

## IV. DEFENDANTS KLEIN'S, RAGLAND'S, SMITH'S AND FIEROH'S MOTION TO DISMISS: ABSOLUTE AND QUALIFIED IMMUNITY

The remaining defendants argue in their separate motions to dismiss that they are entitled to absolute immunity as well as qualified immunity.

### A. Absolute Immunity

■ Defendant Klein argues that all of her actions were an integral part of the prosecution of John Fittanto, and therefore, she is entitled to absolute witness immunity. Absolute witness immunity is based upon a person's statements as a witness during a trial. *See Briscoe v. LaHue,* 460 U.S. 325, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983); *see also Burns v. Reed,* 500 U.S. ——, 111 S.Ct. 1934, 114 L.Ed.2d 547 (1991) (holding that prosecutors are not entitled to absolute immunity for advice to police concerning probable cause to make an arrest).[6] Klein's alleged activities occurred neither on the witness stand nor during a trial. Further, the actions of which plaintiffs complain were not taken in preparation for trial. Klein's complained of actions—improperly interviewing Kristina—occurred before any legal proceedings were initiated. Thus, Klein is not entitled to absolute witness immunity.

Turning to defendants Ragland, Smith and Fieroh, they argue that they are entitled to absolute immunity because their actions were an integral part of the child welfare laws and consequently an integral part of the child welfare judicial process. That their actions may be mandated by the child welfare laws does not automatically accord them absolute judicial immunity.

> Nothing in Burns undermines that holding. It would be a hoax to proclaim immunity for presentation of testimony in court if the person aggrieved by that testimony may attack its preparation. Immunity is not limited to unprepared events at trial! Allowing evasion through litigation about preparation for trial would make no more sense than undermining judicial immunity by entertaining a suit against the law clerk who participated in the preparation of the opinion.
> *Buckley,* 952 F.2d at 966.

Acceptance of that argument would lead to absolute immunity for all state workers who act under color of state law and would nullify § 1983. Defendants Ragland, Smith and Fieroh are not judicial actors and are not entitled to absolute immunity.

### B. Qualified Immunity

■ Absolute immunity being denied, the inquiry now turns to whether defendants Klein, Ragland, Smith and Fieroh are entitled to qualified immunity. Generally, public officials are entitled to immunity unless it has been authoritatively decided that their conduct is forbidden. *Anderson v. Creighton*, 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987); *Alliance to End Repression v. City of Chicago*, 820 F.2d 873, 875 (7th Cir.1987). Determination of qualified immunity is a legal question the answer to which is dependent upon the particular facts of the case. *Green v. Carlson*, 826 F.2d 647, 649 (7th Cir.1987). When a plaintiff sues a government official in his individual capacity, the plaintiff is trying to impose personal liability upon that official for actions performed under color of state law. *Kentucky v. Graham*, 473 U.S. 159, 165, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114 (1985).

■ The Supreme Court enunciated the test for qualified immunity holding that "government officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). The *Harlow* standard is specifically designed to "avoid excessive disruption of government and permit the resolution of many insubstantial claims on summary judgment." [7] *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986). Whether public officials may be held personally liable for allegedly unlawful official actions turns upon the "objective reasonableness" of the officials' actions. The officials' actions must be assessed in light of the legal rules that were "clearly established" at the time that the action was taken. *Anderson v. Creighton*, 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987); *Harlow*, 457 U.S. at 818, 102 S.Ct. at 2738; *Colaizzi v. Walker*, 812 F.2d 304 (7th Cir.1987) (test is "whether the law was clear in relation to the specific facts confronting the public official when he acted").

To be "clearly established," the right must be "sufficiently particularized to put potential defendants on notice that their conduct probably is unlawful." *Colaizzi*, 812 F.2d at 310 (Bauer, C.J., dissenting on other grounds) (*citing Azeez v. Fairman*, 795 F.2d 1296, 1301 (7th Cir.1986)). In *Landstrom v. Illinois Dept. of Children & Family Services*, 892 F.2d 670 (7th Cir. 1990), the Seventh Circuit set forth the following guideline for deciding qualified immunity questions:

> Once the defendant's actions are defined or characterized according to the specific facts of the case the characterization is compared to the body of law existing at the time of the alleged violation to determine if constitutional, statutory, or case law shows that the now specifically defined actions violated the clearly established law.

*Id.* at 675 (*quoting Rakovich v. Wade*, 850 F.2d 1180, 1209 (7th Cir.1988).

■ As to defendant Klein, the issue is whether plaintiffs had a clearly established right to be free from Klein's alleged encouragement or improper evaluation of Kristina's stories of abuse and insistence that John Fittanto be arrested. There is no case on point in the Seventh Circuit concerning the challenged conduct of interviewing a child in such a way that the interview inevitably produces fabricated accusations, which is the conduct that plain-

---

7. Although the issue of qualified immunity is presently being argued on a motion to dismiss, rather than on summary judgment, the Supreme Court has "emphasized that qualified immunity questions should be resolved at the earliest pos-

sible stage of a litigation." *Anderson v. Creighton*, 483 U.S. 635, 646 n. 6, 107 S.Ct. 3034, 3042 n. 6, 97 L.Ed.2d 523 (1987). However, presentation of a motion before discovery narrows the focus to the facts alleged in the complaint.

tiffs allege. In *Myers v. Morris*, 810 F.2d 1437 (8th Cir.1987), however, the Eighth Circuit discussed the issue of techniques used to interview children that had been allegedly sexually abused.

*Myers* stemmed from a nationally publicized investigation of an "organized sexual child abuse ring" in Jordan, Minnesota during 1983 and 1984. *See In re Scott County Master Docket*, 618 F.Supp. 1534 (D.Minn.1985); *"Sex Ring" Fallout*, A.B.A.J., Feb.1985, at 17 (six of the Jordan, Minnesota families file multimillion-dollar civil suits against prosecutor, county officials and therapists involved in the initial criminal proceedings). In *Myers*, plaintiffs alleged that defendants deceived judicial officers as to the reliability of the children's statements, interrogated the children for the purpose of eliciting accusations and used interviewing methods so flawed that they inevitably produced false and fabricated accusations. *Myers*, 810 F.2d at 1445. The Eighth Circuit concluded that the interviewing occurred in "a grey area of investigative procedure as to which there were, and probably still are, less than clearly established legal norms." *Id.* at 1461. Because the law in 1984 and 1985 was not clearly established, the court held that the defendants who interviewed the children were entitled to qualified immunity. *Id.* (noting that this was a case of first impression in the circuit and "Neither the Supreme Court nor any other circuit has addressed the application of the fourth or fourteenth amendment in the context of a child abuse investigation"). The Eighth Circuit did not announce a standard for future cases.

Plaintiffs point to no clearly established law that would have put Klein on notice that her actions were unlawful. The law concerning child abuse workers and children who may have been sexually abused is no clearer today than it was in 1984 and 1985 when the Eighth Circuit decided *Myers*. Because the law in this area is not clearly established, defendant Klein is entitled to qualified immunity for her conduct.

Plaintiffs counter that this case is remarkably like *Snell v. Tunnell*, 920 F.2d 673 (10th Cir.1990). In that case child care workers deliberately fabricated allegations of child prostitution and pornography in order to obtain a court order for the removal of children from a foster home. In that case, the child care workers were denied qualified immunity. *Snell*, 920 F.2d at 696–700. The challenged conduct in *Snell*, however, was very different from that alleged here. In *Snell*, the child care workers *knew* that any allegations of child sexual abuse were false. *Id.* at 698. Plaintiffs make no such allegations in this case.[8] Officer Martinez, who was present at Kristina's interviews, admitted that Kristina related that she had witnessed other activities occurring in the Fittanto home (Answer ¶ 21) and that Kristina alleged that John Fittanto participated in various sexual activities with her (Answer ¶ 22). Based upon this independent support for what was said at Kristina's interview, it cannot be said that defendant Klein fabricated Kristina's allegations.

Although Klein's conduct may ultimately be held unreasonable, plaintiffs cannot show that defendant Klein's conduct violated "clearly established" legal rules. Violation of a clearly established right requires ex ante knowledge that such conduct is prohibited—something plaintiffs fail to show in this case. *See Landstrom v. Illinois Dept. of Children & Family Services*, 892 F.2d 670 (7th Cir.1990) (child care workers who conducted nude examinations of child entitled to qualified immunity); *Darryl H. v. Coler*, 801 F.2d 893 (7th Cir.1986) (holding that where the constitutionality of child abuse workers' procedures cannot be determined, plaintiffs cannot maintain that defendants should have known that their actions violated a clearly established constitutional right). Therefore, Klein is entitled to qualified immunity for her actions taken

---

**8.** In their motion papers, plaintiffs refer to defendant Klein's alleged mishandling of Kristina's interview as deliberate and performed with the improper motive to assure Mr. Fittanto's arrest. However, plaintiffs do not allege that Ms. Klein purposefully fabricated Kristina's allegations for the purpose of insuring Mr. Fittanto's arrest.

during Kristina's interview and her motion to dismiss is granted.

 As to defendants Ragland and Smith, social workers are entitled to qualified immunity when, acting upon a good faith belief that a child is being abused, they remove that child from the family home. *Myers v. Morris*, 810 F.2d 1437, 1462 (8th Cir.1987); *Cobb v. City of Denver*, 761 F.Supp. 105, 107 (D.Colo.1991). After receiving a report of child abuse, defendant Smith assigned a case worker to investigate. Confronted with a report from the Advocacy Center and the arrest of Mr. Fittanto on sexual abuse charges, Ms. Smith's actions were clearly based upon a good faith belief that Marie was being abused. As to defendant Ragland, in light of Mr. Fittanto's arrest, he acted also in a good faith belief that Marie had been abused and that Sara would be abused. Both DCFS employees became involved after Mr. Fittanto's arrest and acted in a good faith belief that Marie and Sara were in danger. Therefore, defendants Smith and Ragland are entitled to qualified immunity. Consequently, as to defendants Smith and Ragland the motion to dismiss is granted.

 As to defendant Fieroh, police officers sued under § 1983 "will not be immune if, on an objective basis, it is obvious that no reasonably competent officer would have concluded that an arrest warrant should issue; but if officers of reasonable competence could disagree on this issue, immunity should be recognized." *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986). A police officer is entitled to qualified immunity if he can establish as a matter of law that a reasonable officer, confronted with the same circumstances, could have believed that his actions, even though mistaken, were reasonable. *Anderson v. Creighton*, 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987).

 Defendant Fieroh presents no cause for his arrest of Mr. Fittanto other than the unsupported allegations of five year old Kristina Lopez. According to the complaint, these grounds were found to be frivolous. Defendant Fieroh did not investigate Kristina's allegations and points to no other evidence upon which he based his decision to arrest Mr. Fittanto. In her interview, Kristina alleged that Marie Lodge and a girl named Emily were also sexually abused. Yet, Marie Lodge was never questioned and no efforts were made to identify and question "Emily." Moreover, Mr. Fittanto agreed to a search of his home. That search produced no evidence to support any of Kristina's allegations.[9] From the complaint, it appears that on an objective basis, it was not reasonable to conclude that an arrest warrant should issue. However, the fact that the charges against Mr. Fittanto were found to be groundless would not automatically mean that qualified immunity should be denied. In *Anderson v. Creighton*, 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987), the Supreme Court held that the objective question is whether a reasonable officer could have believed his conduct to be lawful, in the light of clearly established law and the information he possessed. No argument is made nor is any matter presented relating to objective standards. Only those facts alleged in the complaint are before the court. Thus, defendant Fieroh is not entitled to qualified immunity, and as to defendant Fieroh the motion to dismiss is denied.

IT IS THEREFORE ORDERED that:

(1) Defendant Pamela Klein is dismissed from the case in her official capacity.

(2) Defendant Village of Hanover Park's motion to dismiss is denied.

(3) The motion to dismiss of individual defendants Pamela Klein, Al Ragland, Eunice Smith and Wayne Fieroh is denied in part and granted in part. Defendants

---

**9.** Plaintiffs allege that at a hearing concerning the allegations in this case, no evidence was presented other than Kristina's testimony. No transcript of that hearing has been presented to this court. It is noted, however, that Officer Fieroh has not submitted any other evidence to support his determination of probable cause. Further, he does not argue that any other evidence was presented at the court hearing.

Pamela Klein, Eunice Smith and Al Ragland are dismissed from this case; defendant Wayne Fieroh's motion to dismiss is denied. The state law claims against these defendants set forth in Count Four are dismissed without prejudice.

(4) Defendants Village of Hanover Park and Wayne Fieroh are directed to answer plaintiffs' complaint within fourteen days of the date of this order.